**Gary Alan WALKER, Petitioner,**

v.

**Ron WARD, Respondent.**

**No. 94–C–214–H.**

United States District Court,
N.D. Oklahoma.

May 17, 1996.

Order Supplementing Decision
May 20, 1996.

Jack E. Gordon, Jr., Gordon & Gordon, Claremore, OK, Gloyd L. McCoy, J.W. Coyle, III, Oklahoma City, OK, for petitioner.

Sandra D. Howard, Attorney General of the State of Oklahoma, Diane Blaylock, Office of the Attorney General, Oklahoma City, OK, for respondent.

## ORDER

HOLMES, District Judge.

This matter comes before the Court on cross-motions for summary judgment filed by Petitioner (Docket # 41) and Respondent (Docket # 45). A hearing on these motions was held before the Court on May 15, 1996.

Petitioner was convicted of first-degree murder in the District Court of Tulsa County in 1984. In the sentencing phase of the trial, the State of Oklahoma sought the death penalty and alleged the existence of two statutory aggravating circumstances: (1) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution, 21 Okla.Stat.Ann. § 701.12(5), and (2) the existence of a probability that Petitioner would commit criminal acts of violence that would constitute a continuing threat to society, *id.* at § 701.12(7). *See Walker v. State*, 723 P.2d 273, 276 (Okl.Ct. Crim.App.1986). In support of its second claim, the State produced evidence that, at the time of this homicide, Petitioner had committed three other murders. The State also offered as evidence a statement by Petitioner that he would kill again. Petitioner alleged mental illness as a mitigating circumstance, readopting all of the evidence presented in the first stage of trial in support of his insanity defense. The jury returned a sentence of death on the sole basis that a probability existed that Petitioner would commit criminal acts of violence that would constitute a continuing threat to society.

Upon exhaustion of his state remedies, Petitioner brought this action seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. This matter is now before the United States District Court for the first time. In his petition, he alleged nine grounds for relief, including a claim that the "continuing threat" aggravating circumstance is unconstitutionally vague on its face and as applied to him. Petitioner subsequently filed this motion for summary judgment solely on the constitutionality of the "continuing threat" aggravating circumstance. Respondent filed its cross-motion for partial summary judg-

ment on the same issue.[1]

Under Oklahoma's statutory sentencing scheme, "evidence may be presented as to any mitigating circumstances or as to any of the aggravating circumstances" provided by law in the sentencing phase of the trial. 21 Okla.Stat.Ann. § 701.10. Oklahoma law includes as an aggravating circumstance "[t]he existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." *Id.* at § 701.12. The death penalty may not be imposed unless the jury unanimously finds at least one of the statutory aggravating circumstances beyond a reasonable doubt and finds beyond a reasonable doubt that the aggravating circumstance outweighs any mitigating circumstances. *Id.* at § 701.11.

■ Petitioner challenges the "continuing threat" aggravating circumstance as unconstitutionally vague. The Tenth Circuit recently stated:

> The Supreme Court has announced that a vagueness review should be "quite deferential" because "mathematical precision" is not possible in the definition of aggravating factors. The "basic principle" is that "a factor is not unconstitutional if it has some 'common sense core of meaning ... that criminal juries should be capable of understanding.'" Nevertheless, an aggravating factor may be unconstitutionally vague if it "leave[s] the sentencer without sufficient guidance for determining the presence or absence of the factor."

*United States v. McCullah,* 76 F.3d 1087, 1110 (10th Cir.1996) (quoting *Tuilaepa v. California,* 512 U.S. 967, —– ——, 114 S.Ct. 2630, 2635–36, 129 L.Ed.2d 750 (1994);

*Espinosa v. Florida,* 505 U.S. 1079, 1081, 112 S.Ct. 2926, 2927–28, 120 L.Ed.2d 854 (1992)). A state must sufficiently define aggravating circumstances to narrow the class of criminal defendants to which the death penalty applies. *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

In *Jurek v. Texas,* the United States Supreme Court upheld the constitutionality of the Texas capital sentencing scheme, which allowed the imposition of the death penalty only in those cases where the jury finds beyond a reasonable doubt that " 'there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.' "[2] 428 U.S. 262, 269, 96 S.Ct. 2950, 2955, 49 L.Ed.2d 929 (1976) (quoting Tex.Code Crim.Proc.Ann., art. 37.071(2) (West 1975)). Rejecting a vagueness challenge to the "continuing threat" provision, Justice Stevens, in an opinion joined by Justices Stewart and Powell, wrote:

> [P]etitioner argues that it is impossible to predict future behavior and that the question is so vague as to be meaningless. It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct. Any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison,

1. Respondent also styles its motion as a motion for summary judgment. However, disposition of this issue in Respondent's favor would not dispose of the entire case. The Court therefore construes Respondent's motion as a motion for partial summary judgment solely on the issue of the constitutionality of the "continuing threat" aggravating circumstance. This order does not address the merits of Petitioner's remaining grounds for relief.

2. Texas is a "special issue" state for purposes of capital sentencing. Under the Texas Penal Code applied in *Jurek,* capital homicides consisted of

intentional and knowing murders committed in five specified situations. Upon return of a guilty verdict in a capital case, the jury was required to then find the existence of all three special issues, including the "continuing threat" special issue, beyond a reasonable doubt before a sentence of death could be imposed. The other two special issues have been amended, but the Texas scheme still requires a jury to find the defendant a "continuing threat" in order to impose a punishment of death. *See* Tex.Code Crim.Proc.Ann., art. 37.071 (West 1996).

these same predictions must be made by parole authorities. The task that a Texas jury must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. *What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine.* Texas law clearly assures that all such evidence will be adduced.

428 U.S. at 274–76, 96 S.Ct. at 2957–58 (emphasis added).

Petitioner asserts that the Court should discount this analysis because the Supreme Court issued no opinion of the Court in *Jurek* and the above-quoted language represents the views of only three justices. Pet. at 84–85. However, three other Justices explicitly agreed with the Justice Stevens' opinion that a vagueness challenge should be rejected, expressing the view that "the issues posed in the sentencing proceeding have a common-sense core of meaning and that criminal juries should be capable of understanding them." 428 U.S. at 279, 96 S.Ct. at 2959 (White, J., in an opinion joined by Burger, C.J., and Rehnquist, J., concurring in the judgment); *see Tuilaepa v. California*, 512 U.S. 967, ——––——, 114 S.Ct. 2630, 2635–36, 129 L.Ed.2d 750 (1994) (quoting *Jurek* and noting that "[i]n providing for individualized sentencing, it must be recognized that the States may adopt capital sentencing processes that rely upon the jury, in its sound judgment, to exercise wide discretion.").

■ Applying the reasoning articulated in *Jurek* to the instant case, the Court concludes that the "continuing threat" aggravating circumstance set forth in the Oklahoma statute is not unconstitutionally vague. The language of the Texas and Oklahoma provisions are identical. In conformance with the requirements of *Jurek*, the jury was presented with "all possible relevant information" about Petitioner in making their determination that he was a "continuing threat to society." Before rendering its decision, the jury heard evidence on both sides of the issue. The State painted the picture of a man who had just been convicted of the callous murder of Eddie Cash, had committed three other murders during the same time period, and had made a statement that he would kill again. Petitioner countered by portraying the same man as a victim of child abuse who had been in and out of institutions most of his life. Upon the jury's determination that Petitioner was a "continuing threat," Oklahoma's two-step sentencing procedure required the jury to consider again the mitigating evidence and weigh such evidence against the aggravating circumstance. The Oklahoma procedure thus meets the requirements of *Jurek*.

The Court observes that the United States District Courts for the Northern District and the Western District of Oklahoma previously have rejected vagueness challenges to Oklahoma's "continuing threat" aggravating circumstance. *Banks v. Reynolds*, No. 92–C–747 (N.D.Okl. July 18, 1994); *Castro v. Oklahoma*, No. CIV–94–638 (W.D.Okl. Oct. 18, 1994). Although other states; including Texas, Oregon, Virginia, and Idaho, also require criminal juries to consider the probability that the defendant will be a continuing threat to society, Petitioner cites only one case holding the language of the "continuing threat" provision to be unconstitutionally vague. *Williamson v. Reynolds*, 904 F.Supp. 1529 (E.D.Okl.1995). Based upon a review of the record, relevant case law, and the briefs and arguments of counsel, the Court concludes that with respect to this issue, *Williamson* is not persuasive authority.

Petitioner relies in part upon the briefs submitted by the State in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). In *Maynard*, the State defended the "especially heinous, atrocious, or cruel" aggravating circumstance against a vagueness challenge by stating:

If anything, an aggravating circumstance that requires a jury to speculate as to whether a defendant is going to commit crimes in the future gives the jury *more* discretion than if it merely decides whether the crime was "especially heinous, atrocious, or cruel."

The Court declines to construe arguments of counsel in an unrelated case to be an admission by the State that the "continuing threat"

provision is unconstitutionally vague. Even if such assertions were relevant to the present inquiry, the Court would find them unpersuasive. The gravamen of the State's argument in *Maynard* was that *neither* aggravating circumstance was vague. The brief filed in defense of the "especially heinous, atrocious, or cruel" aggravating circumstance merely asserts that the "continuing threat" provision, not under attack in *Maynard*, gave the jury more discretion than did the aggravating circumstance at issue there. The fact that the Supreme Court determined that the "especially heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally vague certainly does not mean that the Supreme Court accepted the State's argument as to the relative degrees of vagueness. The Court thus concludes that the arguments of counsel in *Maynard* are irrelevant to the present inquiry.

Petitioner also contends that the "continuing threat" provision is vague because the Rogers County District Court, in a non-jury trial, did not apply that aggravating circumstance in the sentencing phase of one of Petitioner's subsequent murder trials. The fact that the finding of one state court judge in a separate case differs from the finding of the jury in the present case does not render the provision unconstitutional. The Court therefore rejects this argument by Petitioner.

■ Finally, Petitioner claims the jury improperly considered his evidence of mental illness in concluding that he constituted a "continuing threat to society." Petitioner asserts that the trial court erred by not instructing the jury that such evidence should be considered only as mitigating evidence. Petitioner does not claim that he requested such an instruction. Further, Petitioner relies upon *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), for the proposition that such an instruction is mandatory. *Penry*, however, arose under the Texas "special issue" sentencing scheme. Beginning with *Jurek*, challenges to the Tex-

as scheme centered upon whether the "special issues" adequately required a jury to consider mitigating evidence. Unlike balancing states like Oklahoma, the special issue states did not explicitly require consideration of mitigating evidence in a separate phase. Therefore, the Supreme Court in *Penry*, concerned that a jury presented with evidence of mental illness would weigh that evidence adversely to the defendant rather than as mitigating evidence, held that the trial court should have instructed the jury that it could consider and give effect to the mitigating evidence of mental retardation by declining to impose the death penalty. *Id.* at 328–30, 109 S.Ct. at 2952. As the Oklahoma balancing system implicitly requires consideration of mitigating evidence put forward by the defendant in the sentencing phase, the problem addressed in *Penry* is not present here. Furthermore, Petitioner has presented no evidence that the jury impermissibly considered his mental status in concluding he was a "continuing threat." To the contrary, the evidence presented by the State was sufficient for the jury to reach that conclusion absent consideration of Petitioner's mental state. The Court therefore finds that the trial court did not err in failing to give a limiting instruction pursuant to *Penry*.

■ The Court holds that Oklahoma's "continuing threat" aggravating circumstance is not unconstitutionally vague. Accordingly, Petitioner's motion for summary judgment (Docket # 41) is hereby denied. Respondent's cross-motion for partial summary judgment (Docket # 45) is hereby granted.[3]

IT IS SO ORDERED.

### SUPPLEMENTAL ORDER

This matter comes before the Court on the supplemental briefs of Petitioner and Respondent addressing the implications on the instant case of the decision of the United States Supreme Court in *Cooper v. Okla-*

---

3. The Court notes that because Petitioner has asserted eight alternative bases for relief in his Petition, this is not a final decision for federal appellate purposes. *See* 28 U.S.C. § 1291. The Court further concludes that an immediate ap-

peal from this Order would not materially advance the ultimate termination of this litigation, and thus an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) would be inappropriate.

*homa,* —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).

In his Petition filed pursuant to 28 U.S.C. § 2254, Petitioner seeks federal habeas relief on nine grounds. Prior to the entry of this Order, the Court denied Petitioner's motion for summary judgment and granted·Respondent's cross-motion for partial summary judgment on one of those grounds, holding that Oklahoma's "continuing threat" aggravating circumstance is not unconstitutionally vague. Before ruling on the remaining issues in the Petition, the Court must consider Petitioner's assertion, articulated in the supplemental briefing and argued at a hearing in this matter before the Court on May 15, 1996, that he has a cognizable claim for relief under *Cooper.*

In *Cooper,* the Supreme Court held unconstitutional the standard of proof utilized by the Oklahoma state courts in making competency determinations. In 1988, a state court conducted a competency hearing for Petitioner. Both counsel for Petitioner and counsel for Respondent agree that in that hearing, the state court applied the standard of proof which was held unconstitutional in *Cooper.* Petitioner now contends that he is entitled to a new competency hearing under *Cooper.*

■■■ Although the current Petition challenges several aspects of Petitioner's 1988 competency hearing, it does not allege that the standard of proof utilized at that hearing was unconstitutional. Furthermore, Petitioner has not requested leave to amend the Petition at this time. Such a request would be problematic if it is determined that Petitioner has not exhausted his state remedies on that issue under 28 U.S.C. § 2254(b)(1) and (c), as amended by the Antiterrorism and Effective Death Penalty Act of 1996.[1] *See Rose v. Lundy,* 455 U.S. 509, 510, 102

S.Ct. 1198, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982). Based on the doctrine of comity, a federal petitioner must either show that the state's appellate court had an opportunity to rule on the claim presented in the federal petition or demonstrate that at the time the federal petition was filed, he had no available means for pursuing a review of his conviction in state court. *See Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950); *White v. Meachum,* 838 F.2d 1137, 1138 (10th Cir.1988). Requiring exhaustion "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam); *see also Harris v. Champion,* 15 F.3d 1538, 1554 (10th Cir. 1994).

■■■ Petitioner argues that he presented a *Cooper* claim to the Oklahoma state courts when he challenged the sufficiency of the evidence at his retrospective competency hearing in 1988, four years after his conviction in the District Court of Tulsa County. This Court does not agree. To exhaust the *Cooper* claim, Petitioner must have "fairly presented" that specific claim to the Oklahoma Court of Criminal Appeals prior to seeking federal habeas relief. *See Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971). Therefore, the Court finds that Petitioner has failed to present the *Cooper* claim to the Oklahoma state courts and thus has not exhausted his state remedies on that issue.

By contrast, Respondent asserts that "Petitioner could have raised the [*Cooper* ] issue on post conviction review and his failure to

---

1. On April 24, 1996, section 2254(b) was amended to read as follows:

(1) An application for a writ of ·habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
  (A) the applicant has exhausted the remedies available in the courts of the State; or
  (B)(i) there is an absence of available· State corrective process or;

(ii) circumstances. exist that render such process ineffective to protect the rights of the applicant.
(2) An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

do so would result in the application of a procedural bar [by the State courts] should the issue be raised now." Resp't Supp'l Br. at 6. Accordingly, Respondent asks the Court to deny the *Cooper* claim as procedurally barred without the exhaustion of state remedies. *See Harris v. Champion,* 48 F.3d 1127, 1130 n. 3 (10th Cir.1995) ("If a federal court that is faced with a mixed petition determines that the petitioner's unexhausted claims would now be procedurally barred in state court, 'there is a procedural default for purposes of federal habeas.' Therefore, instead of dismissing the entire petition, the court can deem the unexhausted claims procedurally barred and address the properly exhausted claims.")

■ In support of its procedural default argument, Respondent relies on Okla.Stat. tit. 22, § 1086, which provides that "issues which could have been raised ... in the first post-conviction application, but were not, are waived." [2] *See Smith v. State,* 878 P.2d 375, 377 (Okla.Ct.Crim.App.1994), *cert. denied,* — U.S. —, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). The only exception to section 1086 arises "when the court finds a ground for relief asserted which 'for sufficient reason was not asserted or was raised inadequately in the prior application for post-conviction relief.'" *Id.*

■ In Oklahoma, it is settled law that an intervening change in the law constitutes a sufficient reason why an issue could not have been raised on direct appeal or in a prior application for post-conviction relief. *See Fowler v. State,* 896 P.2d 566, 570 (Okla. Ct.Crim.App.1995) (concluding that *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), which was decided after the defendant's direct appeal and after his first application for post-conviction

relief was at issue, constituted an intervening change in law and allowed the defendant to assert for the first time that the state had systematically and unconstitutionally excluded female jurors); *VanWoundenberg v. State,* 818 P.2d 913 (Okla.Ct.Crim.App.1991); *Stafford v. State,* 815 P.2d 685 (Okla.Ct.Crim. App.1991); *Cartwright v. State,* 708 P.2d 592 (Okla.Ct.Crim.App.1985); *Stewart v. State,* 495 P.2d 834 (Okla.Ct.Crim.App.1972).

■ Respondent argues that the *Cooper* decision does not present an intervening change in the law and therefore cannot be raised in a second petition for post-conviction relief. Respondent contends the Supreme Court in *Cooper* did not "purport to create a new rule of constitutional [law]," [3] but rather applied the preponderance of the evidence standard adopted by a majority of the states. Resp't Supp'l Br. 6. Based upon the authorities cited above, the Court rejects this contention. In *Stafford,* the Oklahoma Court of Criminal Appeals recognized that the Supreme Court's decision in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), was based upon principles of law previously announced in *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). *Stafford,* 815 P.2d at 687. The *Stafford* court, however, treated *Cartwright* as an intervening change in the law because the constitutionality of the "especially heinous, atrocious or cruel" aggravating circumstance "was not definitively decided until addressed by the Supreme Court in *Cartwright." Id.* Although the *Cooper* decision relied on early English and American decisions and the standard used in a majority of the states, the Supreme Court did not reject Oklahoma's practice of requiring a defendant to prove incompetence by clear and

---

**2.** Okla.Stat. tit. 22, § 1086 provides:

All grounds for relief available to an applicant under [the post-conviction relief act] must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a

ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application.

**3.** The Court declines to address at this time whether *Cooper* presents a "new rule of constitutional law" for purposes of the nonretroactivity principle set out in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See also Caspari v. Bohlen,* 510 U.S. 383, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994).

convincing evidence until the entry of its decision in *Cooper* a month ago. Therefore, the Court rejects Respondent's contention that the *Cooper* claim necessarily would be procedurally barred. Under applicable law, Oklahoma courts could find *Cooper* to be an intervening change in the applicable law, thus allowing them to reach the merits of Petitioner's *Cooper* claim in a second application for state post-conviction relief.

■ Based on the above, the Court finds that Petitioner's supplemental brief alleges the basis for a claim for relief under *Cooper* but that such a request is not properly before the Court at this time. In accordance with established law, the Oklahoma state courts should be granted the initial opportunity to address Petitioner's *Cooper* claim.[4] Accordingly, this action is hereby stayed for sixty (60) days to permit Petitioner to file a second application for post-conviction relief in the Oklahoma Court of Criminal Appeals. Okla. Stat. tit. 22, § 1089(D)(1). Upon the filing of such an application and effective notice by Petitioner to this Court of such filing, the Court will further stay this matter pending the conclusion of the state proceedings. The Court will retain jurisdiction over the instant case and when exhaustion is completed will lift the stay and reopen this action, whereupon Petitioner will be required to file a motion for leave to amend the petition, if appropriate in light of the state court proceeding. If Petitioner does not notify the Court of the filing of a second application for post-conviction relief on or before July 19, 1996, the Court will reopen this action and rule on the merits of the Petition in its current form. In so doing, the Court will construe Petitioner's failure to file such an application as an intentional decision not to assert an available claim under *Cooper* at this time. The Court

4. The Court notes that in light of the Court's ruling on the primary arguments advanced by both Petitioner and Respondent, the parties have agreed to the procedure set forth herein.

5. On April 24, 1996, 28 U.S.C. § 2244(b) was amended in part to provide:
    (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
    (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the

advises Petitioner that if he thereafter attempts to assert his *Cooper* claim in a subsequent federal habeas petition, that petition will be subject to the heightened standards for successive petitions set forth in the Antiterrorism and Effective Death Penalty Act of 1996.[5]

IT IS SO ORDERED.

Supreme Court, that was *previously unavailable;* or
    (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
    (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
(Emphasis added).