**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 22 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

GARY ALAN WALKER,

      Petitioner-Appellant,

v.

ATTORNEY GENERAL FOR THE
STATE OF OKLAHOMA;
RON WARD,

      Respondents-Appellees.

No. 97-5244

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 94-CV-214-H)

---

Gloyd L. McCoy, of Coyle & McCoy, Oklahoma City, Oklahoma (Jack Gordon,
Jr., of Gordon & Gordon, Claremore, Oklahoma, with him on the briefs), for
Petitioner/Appellant.

Sandra D. Howard, Assistant Attorney General, Chief, Criminal Appeals
(W. A. Drew Edmondson, Attorney General of Oklahoma, with her on the brief),
Oklahoma City, Oklahoma, for Respondents-Appellees.

---

Before **SEYMOUR**, Chief Judge, **LUCERO** and **MURPHY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Gary Alan Walker was convicted of first degree murder in Tulsa County, Oklahoma, and sentenced to death. After exhausting his state court remedies, he filed this petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254, alleging that his conviction and death sentence are constitutionally infirm in several respects. The district court denied relief and Mr. Walker appeals, asserting that: (1) his state court competency proceedings were unconstitutional; (2) he was denied due process and equal protection when the state refused to provide funds for neurological testing; (3) he was denied a fair trial because the trial judge refused to instruct on lesser included offenses; and (4) the "continuing threat" aggravating circumstance, which is the only one supporting his death sentence, is unconstitutional on its face and as applied. We grant Mr. Walker's motion for a certificate of probable cause and affirm.[1]

The facts underlying Mr. Walker's conviction are undisputed. The body of the victim, Eddie Cash, was discovered on the floor of his home. He had been beaten on the head with a brick and strangled with a vacuum cleaner cord. Mr. Walker was arrested for the crime and gave a detailed confession. He stated to

---

[1] Because Mr. Walker's petition was filed before the enactment of the Antiterrorism and Effective Death Penalty Act and Oklahoma has not qualified for retroactive application of the Act's new death penalty provisions, the Act does not apply. *See Duvall v. Reynolds*, 131 F.3d 907, 915-16 (10th Cir. 1997).

-2-

police that he met Mr. Cash when he was hitchhiking and Mr. Cash gave him a ride. During the trip, Mr. Walker decided to burglarize Mr. Cash's home and learned that he lived in Broken Arrow, Oklahoma. Mr. Walker subsequently obtained Mr. Cash's address and went to the residence. As Mr. Walker stood on the front porch and knocked on the door to make sure no one was home, Mr. Cash pulled into his driveway. Fearing Mr. Cash would call the police, Mr. Walker ran around to the side of the home and picked up a brick. He returned to the front door, knocked, went inside, and killed Mr. Cash. Mr. Walker then took several items from the residence, including Mr. Cash's shoes and his van.

Mr. Walker did not deny the above events at trial, instead presenting evidence in support of an insanity defense. The state court record reveals that Mr. Walker suffered severe physical and sexual abuse as a child. He was repeatedly beaten by his step-father and at one point was threatened by him with a rifle. His mother had a succession of men in the home, and when Mr. Walker was ten to twelve years old she engaged in sexual relations with him, as well as with his friends. He did poorly in school, and at age thirteen the school referred him to Children's Medical Hospital. Mr. Walker stayed there three months and was thoroughly evaluated. He was diagnosed at that time with a personality disorder, and with poor control over his behavior, impulses, and emotions.

-3-

Although the Hospital recommended that Mr. Walker be placed outside the home, his parents refused. At age fourteen he was convicted for the first time in the juvenile justice system for car theft, and at age nineteen he was hospitalized at Eastern State Mental Hospital. In the following years, Mr. Walker was hospitalized there eight times for lengthy periods and was diagnosed as having a severe psychiatric disorder of a schizophrenic type. He was given anti-psychotic medications and a course of twenty electroconvulsive shock treatments. During this period, Mr. Walker was also convicted of several non-violent offenses and was hospitalized while in prison at least four times for mental problems. He was ultimately rediagnosed with bipolar disorder and treated with lithium.

Prior to trial, Mr. Walker's attorney made a request for a competency determination and Mr. Walker was examined by Samuel J. Sherman, Ph.D., who determined that Mr. Walker was competent at the time of examination. Dr. Sherman cautioned that he had not been provided with the records of Mr. Walker's prior hospitalizations, that Mr. Walker's refusal to continue his lithium treatment could affect his future competency, and that Mr. Walker should be given a complete evaluation. Nonetheless, no post-evaluation competency hearing was conducted before trial as required by then-applicable state law. *See* Okla. Stat. tit.

22, § 1175.4 (1981).[2]

Dr. Thomas Goodman, a psychiatrist, testified at trial in support of Mr. Walker's insanity defense. In addition to reviewing Mr. Walker's medical records, Dr. Goodman had conducted a series of examinations of Mr. Walker in five one-hour sessions, and in one two-hour session while Mr. Walker was under the influence of sodium amytal. Dr. Goodman expressed the opinion that although at the time of the killing Mr. Walker probably knew right from wrong, his perception of the person he was killing was so distorted that he believed the victim was his step-father. Dr. Goodman further testified that in his opinion Mr. Walker did not believe killing his step-father was wrong. The jury rejected Mr. Walker's insanity defense, convicted him of first degree murder, and sentenced him to death.

---

[2] Mr. Walker's trial was held in 1984. At that time, the relevant statute provided that after a competency determination had been made, "a hearing on the competency of the person shall be held." Okla. Stat. tit. 22, § 1175.4(A) (1981). The provision was amended effective September 1, 1991, to provide that a competency hearing shall be held "only upon application of the defendant or the state or upon the formal setting of a competency hearing by the court." Okla. Stat. tit. 22, § 1175.4(A) (1991).

# I.

## COMPETENCY

Although the issues of Mr. Walker's competency to stand trial and the failure to hold a pre-trial competency hearing were not raised on direct appeal, Mr. Walker subsequently raised the matters in an application for state post-conviction relief. The state district court determined that a retrospective post-evaluation competency hearing was feasible, and held a hearing in 1988 at which the court found that Mr. Walker was competent at the time of his trial in 1984. In making this determination, the court held that Mr. Walker had failed to overcome the presumption of competency by clear and convincing evidence.

The state district court denied Mr. Walker's petition for state post-conviction relief and Mr. Walker appealed, contending inter alia that the retrospective competency hearing was inadequate both constitutionally and as a matter of state law to cure the failure to hold a hearing pretrial. Mr. Walker also asserted the evidence was insufficient to show either that a retrospective competency determination was feasible or that he was in fact competent at the time of trial. The Oklahoma Court of Criminal Appeals rejected these arguments. In considering Mr. Walker's assertion that the evidence was insufficient to show his competency, the Court ruled that he had failed to meet the burden of proof set out

by Okla. Stat. tit. 22, § 1175.4(B) (1981), which required a defendant to establish incompetency by clear and convincing evidence. *See Walker v. State*, 826 P.2d 1002, 1005 (Okla. Crim. App. 1992).

Mr. Walker argues that the competency proceedings held in state court were constitutionally defective in two regards. He contends the state trial court used the wrong burden of proof in its retrospective competency determination, and the retrospective hearing was an inadequate substitute for a pretrial hearing on the issue in any event. As discussed below, we conclude that neither claim entitles Mr. Walker to federal habeas relief.

## A. Burden of Proof

Mr. Walker first contends he is entitled to federal habeas relief because the state court used an unconstitutional burden of proof at his competency hearing. In 1996, the Supreme Court struck down the "clear and convincing evidence" standard applied by the state courts here, holding that "[b]ecause Oklahoma's procedural rule allows the State to put to trial a defendant who is more likely than not incompetent, the rule is incompatible with the dictates of due process." *Cooper v. Oklahoma*, 517 U.S. 348, 369 (1996). The Court pointed out that "the State's power to regulate procedural burdens was subject to proscription under the Due Process Clause if it 'offends some principle of justice so rooted in the

traditions and conscience of our people as to be ranked as fundamental,'" and that "[t]his case involves such a rule." *Id*. at 367 (quoting *Patterson v. New York*, 432 U.S. 197, 201-202 (1977)).

Before the Supreme Court handed down its decision in *Cooper*, Mr. Walker filed the present petition for writ of habeas corpus. After *Cooper* was decided, he supplemented his federal habeas petition to add a claim based on that case. The federal district court stayed action on the petition to permit Mr. Walker to exhaust his state remedies by filing an application for post-conviction relief with the Oklahoma Court of Criminal Appeals. *See Walker v. Ward*, 934 F. Supp. 1286, 1294 (N.D. Okla. 1996). The state court ruled the claim procedurally barred for failure to raise it on direct appeal or in Mr. Walker's first post conviction proceeding under amendments to the state's statutory post-conviction procedures enacted subsequently in 1995. *See Walker v. State*, 940 P.2d 509, 510 (Okla. Crim. App. 1997).

The federal district court thereafter ruled that the claim was procedurally barred. In so doing, the court concluded that the issue involved a matter of procedural rather than substantive due process and was therefore waivable. The court rejected Mr. Walker's contention that the relevant procedural default rule is the one in place at the time the alleged procedural default actually occurred. Although we disagree with the district court's ruling that this claim is procedurally

barred, for the following reasons we conclude it does not provide grounds for habeas relief.

## 1. Applicable Legal Standards

A defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and if] he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see also Lafferty v. Cook*, 949 F.2d 1546, 1550 (10th Cir. 1991). Courts have held that competency claims can raise issues of both substantive and procedural due process.

> A petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue. To prevail on the procedural claim, "a petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial."

*Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966) and quoting *James v. Singletary*, 957 F.2d 1562, 1572 n.15 (11th Cir. 1992)); *see also Carter v. Johnson*, 110 F.3d 1098, 1105 n.7 (5th Cir. 1997). On the other hand,

> [a] petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. In contrast to a procedural competency claim, however, "a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." A petitioner who presents "clear and convincing evidence" creating a "real, substantial

> and legitimate doubt" as to his competence to stand trial is entitled to a hearing on his substantive incompetency claim.

*Medina*, 59 F.3d at 1106 (quoting *James*, 957 F.2d at 1572-73); *see also Carter*, 110 F.3d at 1105-06 & n.7.

The distinction between substantive and procedural claims is significant because courts have evaluated these claims under differing evidentiary standards. In addition, we have held that a procedural competency claim is subject to waiver while a substantive competency claim is not. *See Nguyen v. Reynolds*, 131 F.3d 1340, 1346 & n.2 (10th Cir. 1997); *but cf. United States v. Williams*, 113 F.3d 1155,1160 (10th Cir. 1997) (holding in direct appeal that neither substantive nor procedural due process competency rights can be waived). However, our cases have on occasion blurred the distinctions between the two claims, particularly when both claims are raised together. *See, e.g., Castro v. Ward*, 138 F.3d 810, 817-18 (10th Cir. 1998) (applying both procedural and substantive competency standards to claims defaulted in state court); *Sena v. New Mexico State Prison*, 109 F.3d 652 (10th Cir. 1997) (applying procedural standard to substantive claim defaulted in state court). We need not attempt to reconcile any inconsistencies in our cases because we conclude that if the claim here is characterized as procedural and is therefore subject to waiver, it was not waived in this case. We further conclude that Mr. Walker has failed to establish the right to habeas relief under the standards applied either to procedural or to substantive competency claims.

## 2. Procedural Default

Mr. Walker's argument on appeal may be construed as asserting that the state courts' use of the "clear and convincing evidence" standard rendered the procedure used to evaluate his competency inadequate to ensure he was competent to stand trial. Viewed in this light, the claim asserts a denial of procedural due process, a claim that we held in *Nguyen* is subject to waiver. The state court held the claim procedurally barred both because the claim should have been raised on direct appeal and because it was not raised in Mr. Walker's first application for state post-conviction relief. *See Walker*, 940 P.2d at 510. In holding the claim barred by Mr. Walker's failure to raise it on direct appeal, the court applied the 1995 amendments to the state's post-conviction procedures, under which a petitioner who has not raised the issue on direct appeal must show that the legal basis for the claim was unavailable. The court further held that the challenge to the evidentiary standard could have been made in Mr. Walker's direct appeal. *Id.*

We begin by assessing the effect we are to give the state court's application of the 1995 amendments to an alleged default that occurred before those amendments were enacted. When a federal habeas petitioner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred absent a showing of cause and prejudice or of a fundamental miscarriage of justice. *See Coleman v.*

-11-

*Thompson*, 501 U.S. 722, 750 (1991). "The Supreme Court of the United States has made it clear that a state's procedural rule used to bar consideration of a claim 'must have been "firmly established and regularly followed" by the time as of which it is to be applied.'" *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997) (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)), *cert. denied*, 118 S. Ct. 1826 (1998). We agree with the Ninth Circuit that "the proper time for determining whether a procedural rule was firmly established and regularly followed is 'the time of [the] purported procedural default.'" *Id.* at 760 (quoting *Calderon v. Bean*, 96 F.3d 1126, 1130 (9th Cir. 1996)) (alteration in original). A defendant cannot be expected to comply with a procedural rule that does not exist at the time, and should not be deprived of a claim for failing to comply with a rule that only comes into being after the time for compliance has passed. *See id.* (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457 (1958), and *Ford*, 498 U.S. at 424).

We point out that no competency hearing had even been held at the time of Mr. Walker's direct appeal, and that consequently no basis existed then for challenging the burden of proof. Moreover, when Mr. Walker raised the failure to be given a contemporaneous hearing for the first time in his first application for post-conviction relief, the Court of Criminal Appeals considered the merits of this claim despite the failure to raise it on direct appeal. *See Walker*, 826 P.2d at 1005. Accordingly, we conclude that Mr. Walker is not barred by his failure to challenge

the "clear and convincing evidence" standard on direct appeal.

The Oklahoma Court of Criminal Appeals alternatively held that Mr. Walker's *Cooper* challenge to the burden of proof was procedurally barred by his failure to raise it in his first petition for post-conviction relief when he challenged the failure to hold a competency hearing. Prior to the 1995 amendments to the state post-conviction procedures, however, it was settled law in Oklahoma that an intervening change in the law constituted sufficient reason for a petitioner's failure to raise an issue on direct appeal or in a prior application for post-conviction relief. *See Walker*, 934 F. Supp. at 1293 (citing cases). Moreover, Oklahoma had held that a decision qualified as an intervening change in the law even if it was based on previously announced principles so long as it constituted the Supreme Court's definitive resolution of the matter. *See id.* at 1293-94 (quoting *Stafford v. State*, 814 P.2d 685, 687 (Okla. Crim. App. 1991)). The Court of Criminal Appeals specifically noted in *Valdez v. State*, 933 P.2d 931 (Okla. Crim. App. 1997), that a *Cooper* claim would have constituted an intervening change in the law under prior capital post-convictions statutes, *id.* at 933 n.7. Under these circumstances, we hold that Mr. Walker is not procedurally barred from seeking habeas relief on his *Cooper* claim by his failure to raise it in his first state post-conviction petition, and we turn to the merits of that claim.

-13-

### 3. Procedural Competency Claim

A habeas petitioner who makes a procedural competency claim by alleging that state procedures were inadequate to ensure he was competent to stand trial is entitled to habeas relief if the state trial court ignored evidence that, viewed objectively, raised a bona fide doubt as to the petitioner's competency to stand trial. *See Drope v. Missouri*, 420 U.S. 162, 180-81 (1975); *Carter*, 110 F.3d at 1105 n.7; *Medina*, 59 F.3d at 1106. This standard is usually applied to a claim arising when a petitioner asserts that no competency hearing was held despite the existence of evidence creating a bona fide doubt regarding his competency to stand trial or to continue in a trial already begun. In the present case, although a hearing was ultimately held, Mr. Walker's competency was determined under a constitutionally impermissible standard of proof. Such a determination is not entitled to a presumption of correctness. *See Lafferty*, 949 F.2d at 1551 & n.4. Indeed, in view of the Supreme Court's statement in *Cooper* that the clear and convincing evidence requirement "allows the State to put to trial a defendant who is more likely than not incompetent," 517 U.S. at 369, the situation here is arguably analogous to that in which no hearing has taken place. Mr. Walker is therefore entitled to some form of relief if the record evidence is sufficient to raise

a bona fide doubt as to his competency at the time of his trial.[3]

"[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant" to the bona fide doubt inquiry. *Drope*, 420 U.S. at 180; *Castro*, 138 F.3d at 818. The evidence produced at the 1988 competency hearing consisted of the written report of Dr. Sherman in 1984 determining Mr. Walker to be competent, and the testimony of the psychiatrist, Dr. Goodman, as well as testimony from an attorney who represented Mr. Walker in another murder prosecution during approximately the same time period, the district attorney who prosecuted Mr. Walker for the Eddie Cash murder, the police officer who interviewed Mr. Walker upon his arrest, Mr. Walker's trial attorney, and an investigator for the district attorney's office who observed Mr. Walker during his trial.

Although Dr. Sherman had determined that Mr. Walker was competent, he had qualified his opinion with concerns that it might be altered by an examination of Mr. Walker's medical records, by the results of recommended diagnostic tests or psychological and psychiatric evaluations, and by Mr. Walker's failure to

---

[3]The state asserts that if Mr. Walker were to establish a bona fide doubt as to his competency in 1984, the appropriate remedy would be a reweighing of the evidence presented in the retrospective competency hearing under the preponderance of the evidence standard, rather than a new competency hearing. Given our determination that Mr. Walker does not meet the standard for obtaining a new competency hearing, we need not decide this issue.

continue on his lithium program. However, Dr. Goodman had subsequently interviewed Mr. Walker extensively and had reviewed his medical record. He stated at the competency hearing that: "My opinion at [the time of trial] and my opinion now . . . is that . . . he was at that time competent to stand trial under the Oklahoma Statutes." Transcript of Competency Hearing, Nov. 29, 1988, at 101; *see also* Okla. Stat. tit. 22, § 1175.3(E) (1981) (setting forth factors doctors must consider in determining competency). Dr. Goodman also answered "no" when asked if, during his interviews, Mr. Walker often appeared confused about what was happening in the court proceedings. *Id.* at 109. Dr. Goodman had also prepared a pretrial written psychiatric evaluation of Mr. Walker for his attorney purportedly directed to both his mental state at the time of the crime and his capacity to stand trial, in which Dr. Goodman had stated that the evaluation could reach a higher degree of certainty if further tests and evaluations could be performed on Mr. Walker. This report in fact dealt only with Mr. Walker's mental state at the time of the crime and with the elements of an insanity defense. Dr. Goodman expressed no opinion in that report on Mr. Walker's competency to stand trial nor did he indicate at the competency hearing that his opinion on Mr. Walker's competency was qualified by the lack of that testing.

Mr. Walker's trial counsel also testified at the competency hearing. He stated that he had represented thousands of criminal defendants and had in other

cases objected to going forward with a trial based on his belief that the defendant might not be competent. Although he further testified that Mr. Walker's moods varied and that at times he felt Mr. Walker did not understand clearly what was going on, he admitted he had not raised Mr. Walker's competency at trial. Indeed, he put Mr. Walker on the stand. The attorney who represented Mr. Walker in the other, contemporaneous criminal proceeding testified that he too experienced times during his representation of Mr. Walker when Mr. Walker did not appear to comprehend what was going on. Nonetheless, that attorney did not ask for a jury trial on Mr. Walker's competence or file an objection to going to trial based on that basis. The attorney also testified that it would have been his obligation to bring to the attention of the court any information indicating Mr. Walker was not competent to stand trial, and that he believed the issue in his trial to be insanity rather than competence. Finally, the judge observed that he had tried the case and that he had noticed nothing at the time to raise a concern about Mr. Walker's competency.

We have carefully reviewed the evidence pertaining to Mr. Walker's competency at the time of his trial, including the transcript of his trial testimony. This record sets out a lamentable and grievous life history. It is undisputed that Mr. Walker was brutalized physically, emotionally, and sexually by his parents. His medical records reveal a history of serious mental disease that was apparently

difficult to diagnose and to treat effectively. Nonetheless, the experts who examined the evidence determined that Mr. Walker was competent to stand trial and we have found nothing in the record to the contrary. The evidence, deplorable as it is, simply does not raise a bona fide doubt as to Mr. Walker's competency at the time of his trial. Accordingly, he cannot prevail on his procedural competency claim.

### 4. Substantive Competency Claim

Mr. Walker's failure to establish his procedural competency claim is also dispositive of his substantive claim. As discussed above, to succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a "'real, substantial and legitimate doubt' as to his competency to stand trial." *Medina*, 59 F.3d at 1106 (quoting *James*, 957 F.2d at 1573). The evidence here, which does not satisfy the "bona fide doubt" standard for a procedural claim, also does not satisfy the more demanding standard for a substantive claim. We therefore reject Mr. Walker's argument that he was tried while incompetent.

## B. Retrospective Hearing

We turn to Mr. Walker's argument that the failure to provide him a contemporaneous competency hearing resulted in a denial of due process, and that the retrospective hearing held four years after his trial was an improper remedy.

This argument is based on Mr. Walker's assertion that a contemporaneous hearing was mandated both by evidence tending to cast doubt on his competency and by the state statutes then in effect. Neither ground provides a basis for federal habeas corpus relief.

First, as discussed above, Mr. Walker's evidentiary showing failed to meet the standards for either a procedural or a substantive competency claim. His due process right not to be tried while incompetent was therefore not violated.[4]

---

[4]This is not a case like *Pate v. Robinson*, 383 U.S. 375 (1966), where the Supreme Court raised concerns about a retrospective competency hearing because "[t]he jury would not be able to observe the subject of their inquiry and expert witnesses would have to testify solely from information contained in the printed record," *id.* at 386. Here, the trial judge who observed Mr. Walker in the criminal trial and heard him testify was the same judge who decided the competency issue at the retrospective hearing. Mr. Walker's defense attorney for this crime, the prosecuting attorney, and an attorney who represented Mr. Walker in another case during 1984-85, all testified. Moreover, the psychiatrist who was Mr. Walker's expert witness on his insanity defense at trial testified at the retrospective hearing as to Mr. Walker's competence at the time of trial, and the court had before it Dr. Sherman's report. In these circumstances, we are not persuaded Mr. Walker was deprived of due process by the retrospective competency hearing. *See Reynolds v. Norris*, 86 F.3d 796, 802 (8th Cir. 1996) (holding that "a post-conviction competency hearing is proper so long as a meaningful hearing remains possible"); *Galowski v. Berge*, 78 F.3d 1176, 1181 (7th Cir. 1996) (noting that the Seventh Circuit allows retrospective competency hearings); *Cremeans v. Chapleau*, 62 F.3d 167, 170 (6th Cir. 1995) (finding adequate a retrospective competency hearing where the evidence presented included "contemporaneous medical reports; the testimony of the presiding trial judge and the defendant's attorney; and the transcript of the penalty hearing held before the jury including the testimony of the petitioner"); *Moran v. Godinez*, 57 F.3d 690, 696 (9th Cir. 1995) (upholding finding of competency at retrospective hearing where the judge had also presided at trial and evidence included two contemporaneous psychiatric

(continued...)

Second, the state appellate court in this case made clear that such a hearing was not a per se violation of the state statutes then in effect and did not therefore implicate a liberty interest created by state law. *See Walker*, 825 P.2d at 1005. We thus find no merit in Mr. Walker's claim that his failure to be given a contemporaneous hearing violated his constitutional rights.

## II.

## NEUROLOGICAL TESTING

Mr. Walker asserts he was denied due process and equal protection by the state courts' failure to provide funds for neurological testing. Although Dr. Sherman, a psychologist, determined Mr. Walker was competent to stand trial, he also recommended that Mr. Walker be given a further complete psychological and psychiatric evaluation. Dr. Goodman, the psychiatrist consulting at the time of

---

[4](...continued)
reports); *United States v. Mason*, 52 F.3d 1286, 1293 (4th Cir. 1995) (allowing a retrospective competency hearing if enough contemporaneous evidence exists to make such a determination); *Miller v. Dugger*, 838 F.2d 1530, 1544 (11th Cir. 1988) ("The determination of whether a district court can hold a meaningful retrospective competency hearing is necessarily a case-by-case one."); *Wheat v. Thigpen*, 793 F.2d 621, 630 (5th Cir. 1986) (allowing retrospective competency hearings when there is "sufficient data available to guarantee reliability"); *Crail v. United States*, 430 F.2d 459 (10th Cir. 1970) (upholding retrospective competency hearing where two physicians who examined the defendant at the time of trial testified).

trial on the insanity defense, also strongly urged that further neurological testing be conducted because Mr. Walker presented the profile of an individual who often suffers from minimal organic brain disease, which Dr. Goodman stated could be relevant as either a cause or factor in Mr. Walker's mental illness. Mr. Walker was clinically examined by Dr. John Hastings, a neurologist, to evaluate the possibility of minimal brain damage. Dr. Hastings recommended that an electroencephalogram be repeated to rule out a seizure disorder, and that Mr. Walker be given a CT scan to rule out physical brain abnormalities. Although Mr. Walker's attorney unsuccessfully requested a trial continuence so that additional evaluation of Mr. Walker's mental state could be conducted, the record contains no evidence that Mr. Walker's attorney requested funds to pay for further neurological testing. We note, however, that funds for such tests were denied Mr. Walker in the contemporaneous criminal proceeding in which Dr. Goodman also assisted him. It is clear that due either to lack of time or lack of funds, Mr. Walker was denied the opportunity to conduct the additional neurological testing recommended by the experts who examined him before trial. We must therefore assess whether he is entitled to federal habeas corpus relief on that ground.

Mr. Walker contends the lack of additional testing is relevant both to his competency claims and to his insanity defense. In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Supreme Court held that due process requires a defendant be provided

with court-appointed psychiatric assistance at trial and during sentencing if he demonstrates his mental state will be a significant factor in those proceedings. *Id.* at 1091-92. Although *Ake* was decided in 1985 after Mr. Walker's trial, we have held it nevertheless applies to cases such as this which were pending on direct appeal at the time. *See Liles v. Saffle*, 945 F.2d 333, 335 n.2 (10th Cir. 1991). Under these circumstances, the question is whether, upon review of the entire record, the petitioner *could have* made a threshold showing of need, which requires substantive supporting facts. *Id.* at 336. Although general allegations of need without substantive supporting facts and undeveloped assertions that assistance would be beneficial will not suffice, *id.*, we have construed *Ake* broadly, *see Brewer v. Reynolds*, 51 F.3d 1519, 1529 (10th Cir. 1995). We held in *Brewer* that even when the State did not present expert testimony, the *Ake* requirements apply if the State presented evidence at the sentencing phase concerning the defendant's future dangerousness and the defendant showed that his mental condition could have been a significant mitigating factor. *Id.* The inquiry is whether evidence was presented to the trial court suggesting that his mental condition was likely to be a significant factor. *Castro v. Reynolds*, 71 F.3d 1502, 1513-14 (10th Cir. 1995). We believe the evidence described above presented through the mental health experts was sufficient to trigger the application of *Ake*, and the State therefore should have provided Mr. Walker with the opportunity for

the neurological testing those experts recommended.

That conclusion does not end our inquiry, however. The denial of psychiatric assistance in violation of *Ake* is trial error subject to harmless error analysis under the standard set forth in *Kotteakos v. United States*, 328 U.S. 750 (1946); *see Brewer*, 51 F.3d at 1529. We must therefore decide whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos*, 328 U.S. at 776. Under this standard, we will grant relief if we believe the error substantially influenced the jury's decision, or if we are in grave doubt as to the harmlessness of the error. *See O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Our review of the record convinces us that the lack of the additional recommended testing had no substantial injurious impact on the jury's decision. Dr. Goodman testified extensively at trial in support of Mr. Walker's insanity defense. Although Dr. Goodman stated that Mr. Walker had not been given a CT scan or an electroencephalogram and that he would have been more comfortable with his opinion if Mr. Walker had been given those tests, Dr. Goodman responded affirmatively when he was asked whether he was comfortable in giving his opinion based on the information he had at that time. We have reviewed Dr. Goodman's testimony and we are not convinced the lack of these tests was significant. The focus by both the prosecution and the defense in their extensive examination of

Dr. Goodman was on the nature of Mr. Walker's mental illness and the effect his illness had upon his behavior rather than on its cause. Moreover, Dr. Goodman's testimony indicated to the jury that he and other experts who had examined Mr. Walker believed that his illness did in fact have an organic component.

We likewise conclude that the lack of neurological testing did not have an injurious impact on Mr. Walker's competency proceedings. Dr. Goodman stated unequivocally his opinion that Mr. Walker was competent to stand trial. Although Dr. Goodman reiterated that a higher degree of certainty would have existed if the additional testing had been done, he did not qualify his opinion on Mr. Walker's competency. As with the question of insanity, the issue for determination in the competency proceedings was not the cause of Mr. Walker's mental illness but its effect on his ability to understand the charges against him and to aid in his defense. Accordingly, the lack of neurological testing is not grounds for federal habeas relief.

## III.

### LESSER INCLUDED OFFENSE INSTRUCTIONS

Mr. Walker argues that his constitutional right to a fair trial was violated when the trial court refused to instruct the jury on the lesser included offenses of

second degree murder and first degree manslaughter. A capital defendant is constitutionally entitled to instructions on offenses that state law recognizes as lesser included offenses of the charged crime, *see Beck v. Alabama*, 447 U.S. 625, 627 (1980), but only when such instructions are supported by the evidence, *see Hopper v. Evans*, 456 U.S. 605, 610 (1982); *see also Hopkins v. Reeves*, 118 S. Ct. 1895, 1900 (1998); *Hatch v. Oklahoma*, 58 F.3d 1447 1453-54 (10th Cir. 1995).

Mr. Walker was convicted of committing first degree murder by causing the death of another with malice aforethought in violation of Okla. Stat. tit. 21, § 701.7(A). He asserts the jury should have been allowed to consider a conviction for second degree murder under a state statute defining second degree murder as that committed while engaged in the commission of, inter alia, second degree burglary. *See id.* § 701.8(2). Second degree burglary, in turn, is defined as that committed by breaking into a building with the intent to steal property. *See id.* § 1435. It differs from first degree burglary in that first degree burglary is committed by breaking into a dwelling that contains a person. *See id.* § 1431.

Mr. Walker contends that in his trial, the State argued and the evidence showed that his actions constituted an attempted second degree burglary. He presented this argument in his direct criminal appeal and the Oklahoma Court of Criminal Appeals disagreed, holding that although Mr. Walker had been

attempting a second degree burglary when the victim arrived home, Mr. Walker abandoned that attempt when he saw the victim, fled to the side of the house and waited until Mr. Cash had entered the home to gain admittance. *See Walker v. State*, 723 P.2d 273, 283 (Okla. Crim. App. 1986). The state court's conclusion that the undisputed facts established at trial amounted to abandonment of second degree burglary is a construction of state law to which this court must defer.

Mr. Walker's argument that he was entitled to an instruction on first degree manslaughter is similarly without merit. Oklahoma law defines this crime as a homicide perpetrated without a design to effect death. *See* Okla. Stat. tit. 21, § 711(2). We have carefully reviewed the trial record and have found no evidence to support the giving of this instruction. Dr. Goodman's testimony in support of Mr. Walker's insanity defense clearly indicates that although Mr. Walker may have acted in a rage, he did intend to kill his victim. There is simply no evidence to support a contrary finding. The trial court did not err in denying this instruction.

## IV.

### CONTINUING THREAT AGGRAVATING CIRCUMSTANCE

Finally, Mr. Walker argues that the continuing threat aggravating circumstance is unconstitutional on its face and as applied. In so doing, he

recognizes we have rejected his argument in *Nguyen v. Reynolds*, 131 F.3d 1340 (10th Cir. 1997), but presents the argument nonetheless to preserve the issue in hopes that the Supreme Court may intervene.

## V.

## CONCLUSION

Having carefully considered Mr. Walker's claims, we are not persuaded that constitutional errors infected his state court trial. We **AFFIRM** the judgment of the district court denying Mr. Walker's petition for a writ of habeas corpus.