**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 10 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GEORGE KENT WALLACE,

          Petitioner-Appellant,

v.

    No. 98-7116

RON WARD, Warden, Oklahoma
State Penitentiary,

          Respondent-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 97-CV-213-B)

---

Submitted on the briefs:

Scott W. Braden, Assistant Federal Public Defender, Oklahoma City, Oklahoma,
for Petitioner-Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert L. Whittaker,
Assistant Attorney General, Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **BALDOCK** , **EBEL** , and **LUCERO** , Circuit Judges.

---

**BALDOCK** , Circuit Judge.

---

Petitioner George Kent Wallace, an Oklahoma state prisoner, entered guilty pleas to two counts of first degree murder and sought the death penalty, which the state trial court imposed. After direct criminal appeal and post-conviction proceedings, petitioner filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254. The district court denied relief. On appeal, petitioner argues (1) application of the new standards of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (ADEPA) would have an impermissible retroactive effect; (2) the trial court violated his due process rights by analyzing his competency under the "clear and convincing evidence" standard prohibited by Cooper v. Oklahoma, 517 U.S. 348 (1996); and (3) his trial counsel was ineffective due to a conflict of interest and his failure to investigate mitigating evidence. Petitioner also argues the federal district court abused its discretion in denying his request for discovery on the conflict issue. Our jurisdiction arises under 28 U.S.C. §§ 1291 and 2253, and we affirm the federal district court's judgment.

## I. BACKGROUND

On February 17, 1987, petitioner, posing as a police officer, pretended to arrest fifteen year old William Von Eric Domer in Van Buren, Arkansas. Petitioner frisked, handcuffed, and shackled Domer and then put him in the back seat of petitioner's rental car. Petitioner drove across the Arkansas state border to

-2-

Leard Pond near Pocola, Oklahoma. There, petitioner pulled down Domer's pants and underpants and attempted to beat him with a paddle. After Domer resisted, petitioner pulled up his clothing, removed him from the car, and walked him down a hill. Petitioner shot Domer twice in the back with a .25 caliber pistol. Thereafter, petitioner removed the handcuffs and leg irons, dragged Domer's body, and threw the body into the pond.

On November 11, 1990, petitioner, again posing as a police officer, stopped fourteen year old Anthony McLaughlin in Van Buren. Petitioner pretended to arrest McLaughlin, frisked him, placed handcuffs and leg irons on him, and then put him in the back seat of petitioner's rental car. As with Domer, petitioner drove to Leard Pond. Upon arriving, petitioner got in the back seat with McLaughlin, pulled down his pants and underpants, and spanked him with a wooden plunger handle. After doing so, petitioner pulled up McLaughlin's clothing, got him out of the car, walked him to the pond, and shot him in the back once with a .22 caliber pistol. Thereafter, petitioner removed the handcuffs and leg irons and threw McLaughlin's body in the pond.

Arkansas authorities arrested petitioner on December 9, 1990. On that day, petitioner again impersonated a police officer when he pretended to arrest Ross Allen Ferguson in Van Buren. Petitioner placed handcuffs and leg irons on Ferguson and then put him in the backseat of another rental car. Petitioner drove

to a country road, parked the car, climbed in the backseat, pulled down Ferguson's pants and underpants, and beat him with a rod. After the beating, petitioner removed Ferguson from the car and began walking him down the road. Ferguson, who was aware of the McLaughlin murder, asked petitioner if he intended to shoot him. Petitioner replied that he would not and proceeded to stab Ferguson six times with a knife. Feigning death, Ferguson allowed petitioner to drag him to a nearby pond. When petitioner removed the handcuffs and leg irons, Ferguson ran to the rental car, drove away, and notified Arkansas authorities. Petitioner was arrested near the scene a short while later.

Petitioner confessed to the two murders and pleaded guilty to two counts of first degree murder. After the State presented its aggravating evidence at the punishment trial, petitioner took the stand himself and requested that the trial court impose the death penalty. The trial court found three aggravating circumstances: petitioner had previously been convicted of a felony involving the threat or use of violence, the murders were especially heinous, atrocious or cruel, and petitioner would pose a continuing threat to society. The trial court imposed the death penalty. At sentencing, the trial court advised petitioner of his appeal rights, including the Oklahoma requirement that he withdraw his guilty

pleas in order to appeal his convictions.  See Tr. of 4/12/91 Hr'g at 7-12. [1]

Petitioner waived his appeal rights both verbally and in writing and did not attempt to withdraw his guilty pleas.  Instead, he expressed his desire to be executed as soon as possible.  See id. at 10-12.

Because Oklahoma provides for mandatory sentence review, see Okla. Stat. tit. 21, § 701.13(A), the trial court appointed counsel to represent petitioner on appeal.  The Oklahoma Court of Criminal Appeals remanded the case to the trial court to determine, among other things, who represented petitioner on appeal, whether petitioner waived an appeal other than mandatory sentence review, and whether petitioner's request for an appeal out of time should be granted.  After holding a hearing, the trial court found that petitioner had waived an appeal, except mandatory sentence review, but, nonetheless, he should be allowed an appeal.  The Oklahoma Court of Criminal Appeals granted an appeal out of time, determined petitioner had waived all issues other than mandatory sentence review because he did not file an application to withdraw his guilty plea, and upheld the death sentences.  See Wallace v. State, 893 P.2d 504, 509-10, 517 (Okla. Crim.

---

[1] To appeal from a guilty plea, a defendant must file an application to withdraw the plea within ten days of judgment.  See Okla. R. Crim. App. 4.1, Okla. Stat. tit. 22, ch. 18, app. (1991).  If the motion is denied, the conviction may be appealed within ninety days of conviction by a petition for writ of certiorari to the Oklahoma Court of Criminal Appeals.  See Okla. Stat. tit. 22, § 1051(a).

App.), cert. denied , 516 U.S. 888 (1995). [2] That court later denied post-conviction relief, discovery, and an evidentiary hearing.  See Wallace v. State , 935 P.2d 366 (Okla. Crim. App.),  cert. denied , 521 U.S. 1108 (1997).

Petitioner commenced a habeas action in federal district court, and again moved for discovery and an evidentiary hearing.  The district court denied all relief and denied a certificate of appealability (COA).  See 28 U.S.C. § 2253(c). This court granted COA on the issues listed above and denied it on all others. [3]

## II.  APPLICABILITY OF AEDPA'S STANDARDS OF REVIEW

Petitioner first argues the district court erred in applying the standards of review set forth in AEDPA, even though he filed his habeas petition after the effective date of AEDPA.  Petitioner submits that application of AEDPA's new standards to state court proceedings completed before enactment or effectiveness

---

[2] The Oklahoma Court of Criminal Appeals "found insufficient evidence to support the finding the [Domer] murder was especially heinous, atrocious or cruel."  Wallace , 893 P.2d at 514.  Upon reweighing the evidence, the court found the remaining two aggravators supported imposition of the death penalty for the Domer murder.  See id.

[3] This court denied COA on the following issues:  (1) either the State's failure to disclose exculpatory evidence or trial counsel's failure to present mitigating evidence deprived him of an accurate sentencing determination; (2) the especially heinous, atrocious or cruel aggravating circumstance is unconstitutionally vague; (3) the state appellate court failed to consider mitigating evidence; (4) the continuing threat aggravator is unconstitutional; and (5) petitioner is entitled to discovery with respect to his claim the State failed to disclose exculpatory evidence.

of AEDPA is unconstitutionally retroactive. This court has held to the contrary, determining that AEDPA applies to cases filed after its effective date, regardless of when state court proceedings occurred. See Rogers v. Gibson, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999); see also Berget v. Gibson, No. 98-6381, 1999 WL 586986, at *2-*4 (10th Cir. Aug. 5, 1999) (unpublished order and judgment in capital case citing Rogers and holding that application of AEDPA to cases filed after its effective date is not impermissibly retroactive); Mueller v. Angelone, 181 F.3d 557, 565-72 (4th Cir. 1999).

> Under AEDPA,
>
> a state prisoner will be entitled to federal habeas corpus relief only if he can establish that a claim adjudicated by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." [28 U.S.C. § 2254(d).] Further, "a determination of a factual issue made by a State court shall be presumed to be correct." [Id.] § 2254(e)(1). That presumption of correctness is rebuttable only "by clear and convincing evidence." Id.

Boyd v. Ward, 179 F.3d 904, 911-12 (10th Cir. 1999). If, however, a state court did not decide a claim on its merits and instead the federal district court decided the claim in the first instance, this court reviews the district court's conclusions of law de novo and factual findings, if any, for clear error. See LaFevers v. Gibson, 182 F.3d 705, 711 (10th Cir. 1999).

-7-

We have applied, but not defined, AEDPA's standards. <u>See</u> <u>Bryson v.</u> <u>Ward</u>, No 97-6435, 1999 WL 590738, at n.3 (10th Cir. Aug. 6, 1999). The United States Supreme Court has granted certiorari to review the Fourth Circuit's interpretation of the standards. <u>See</u> <u>Williams v. Taylor</u>, 119 S. Ct. 1355 (1999); <u>see also</u> 67 U.S.L.W. 3608 (Apr. 6, 1999) (listing issues presented). Under any possible interpretation, the outcome of this appeal will be the same. Thus, we decline to interpret the standards in this case.

## III. COMPETENCY

Petitioner argues that his due process rights were violated when the trial court used the "clear and convincing" evidence standard prohibited by <u>Cooper v.</u> <u>Oklahoma</u>, 517 U.S. 348 (1996), to determine whether he was competent to stand trial and to enter guilty pleas. Petitioner contends that the federal district court erred in assessing whether he was competent and instead should have looked at what process the trial court used to determine competency. [4] Petitioner further argues the district court erred in affording the state court factual findings a presumption of correctness because the trial court used the wrong standard for

---

[4] Petitioner conceded at oral argument that he is raising only a procedural, and not a substantive, due process claim.

-8-

assessing competency and because his trial counsel did not investigate and raise an issue of incompetency.

Oklahoma law in effect at the time the state trial court determined petitioner's competency required criminal defendants to prove incompetence by "clear and convincing evidence." Okla. Stat. tit. 22, § 1175.4(B). The Supreme Court struck down the "clear and convincing" evidence standard holding that "[b]ecause Oklahoma's procedural rule allows the State to put to trial a defendant who is more likely than not incompetent, the rule is incompatible with the dictates of due process." Cooper, 517 U.S. at 369. Thus, we must determine whether the trial court applied an unconstitutional standard when conducting petitioner's competency proceedings.

On direct criminal appeal, which was pre-Cooper, petitioner presented the Oklahoma Court of Criminal Appeals with the competency issue presented here. See Wallace, 893 P.2d at 516-17. That court determined petitioner waived any argument he was not competent to stand trial, plead guilty, or waive rights, because he did not withdraw his guilty pleas. See id. at 510, 516. Nonetheless, the court decided, based on the evidence before the trial court, that petitioner's competency arguments were without merit "[u]nder whatever standard," as there was never any real question about his competency. Id. (citing Dusky v. United States, 362 U.S. 402 (1960)).

On post-conviction review, despite recognizing the Supreme Court's intervening opinion in Cooper, the Oklahoma Court of Criminal Appeals first declined to address the issue because it had been raised and addressed on direct appeal. See Wallace, 935 P.2d at 371. Even if the claim were not barred by res judicata, that court alternatively determined, after carefully and thoroughly examining all portions of the record concerning competency, it would not grant relief because competency to stand trial was never factually controverted by petitioner or really in doubt by the parties or the trial court. See id. at 371 n.4. Thus, the court believed that petitioner was never in a position of having to meet an unconstitutional burden of proof. See id. at 372 n.4.

The federal district court, although finding procedural bar due to petitioner's failure to withdraw his guilty pleas, addressed the merits for the reason that competency bears upon the knowing waiver of constitutional rights. See Dist. Ct. R. vol. VII, doc. 40 at 14, 20. The court concluded the record supports the state court determinations that petitioner was competent.

On appeal, respondent notes that the district court correctly recognized the state jurisdictional rule requiring petitioner to withdraw his guilty pleas. Respondent, however, does not actually assert procedural bar. Instead, he cites to recent Tenth Circuit authority, Walker v. Attorney General, 167 F.3d 1339, 1344 (10th Cir. 1999), and proceeds to discuss the merits of this claim. See Appellee's

-10-

Br. at 8-9. Because respondent does not specifically argue procedural bar, we turn to the merits of petitioner's claim. See Hooks v. Ward, No. 98-6196, 1999 WL 502608, at *9 (10th Cir. July 16, 1999) (holding State is required to raise procedural bar as affirmative defense or it is waived).

The state trial court held two competency hearings. We consider each separately to determine whether the state trial court applied the unconstitutional "clear and convincing" evidence standard prohibited by Cooper.

Before petitioner's initial appearance, his counsel filed an application for determination of competency expressing his doubts about petitioner's ability to understand the gravity of his situation and stating that petitioner was incompetent. See O.R. (CRF-91-1, CRF-91-2) at 16; see also Tr. of 1/29/91 Hr'g at 3 (noting trial counsel filed application for determination of competency at court's request). The trial court ordered a competency examination. At the first competency hearing, Judge Lee stated "the defendant is presumed to be competent for purposes of the allocation of the burden of proof, and the burden of going forward with the evidence. . . . I think that puts the burden on the defendant to go forward with the evidence." Tr. of 2/4/91 Hr'g at 8-9. At the conclusion of the hearing and in his order, Judge Lee determined petitioner to be competent and denied petitioner's request for further examination. See id. at 29; O.R. (CRF-91-1, CRF-91-2) at 30-31.

-11-

Under these circumstances, we assume Judge Lee applied Oklahoma law, the "clear and convincing" evidence standard held unconstitutional by Cooper. Because the state trial court utilized an unconstitutional standard of proof, its decision would "not [be] entitled to a presumption of correctness, and [would be] analogous to no competency hearing at all." Barnett v. Hargett, 174 F.3d 1128, 1135 (10th Cir. 1999); see also Walker, 167 F.3d at 1345. [5] Petitioner would be entitled to habeas relief if he establishes "a bona fide doubt as to his competency" at the time he entered his guilty plea. Barnett, 174 F.3d at 1135; see also Rogers, 173 F.3d at 1290; Walker, 167 F.3d at 1343, 1345. A defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and if] he has a rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. at 402 (quotation omitted); see also Godinez v. Moran, 509 U.S. 389, 399 (1993) (holding same competency standard applies to defendants who plead guilty). Evidence of irrational behavior, demeanor at trial, and prior medical opinion regarding competence are relevant to a bona fide doubt inquiry. See Rogers, 173 F.3d at 1290; Walker, 167 F.3d at 1346.

---

[5] We recognize the district court reached its decision before this court decided Barnett and Walker.

The record reveals no bona fide doubt as to petitioner's competency. A mental health expert, called by petitioner, testified at the hearing and submitted a report stating that petitioner appreciates the nature of the charges against him and can consult with his attorney and rationally assist in the preparation of his defense. See Tr. of 2/4/91 Hr'g at 15 & ex. p. 8. Although she testified that she had found approximately seventy-five percent of the people she had examined to be incompetent, she had no doubt as to petitioner's competency. See id. at 13-14, 16, 18. The State called a criminal investigator, who had interviewed petitioner. He also testified that petitioner understood the charges against him and could assist his attorney. See id. at 24. Thus, no evidence at the first hearing raised any doubt about petitioner's competency.

At arraignment, two weeks later, after learning petitioner intended to change his pleas to guilty, Judge Knight, who was now hearing proceedings in petitioner's case, ordered a complete psychological evaluation of petitioner out of an abundance of caution, and not because he had a doubt regarding petitioner's competency. See Tr. of 2/21/91 Hr'g at 4, 6, 8. Petitioner objected, and his attorney stated he had no doubt petitioner was competent to assist with his defense, if he desired to do so. See id. at 4-5, 7. The State also objected. See id. at 6. Nonetheless, Judge Knight appointed an amicus attorney to file an application to determine competency. The application did not raise any doubts

-13-

regarding petitioner's competency, but merely indicated it was filed on the court's motion to protect petitioner's due process rights.    See O.R. (CRF-91-1, CRF-91-2) at 35-36.

At the second competency hearing, held five weeks after the first hearing, petitioner presented no witnesses and the State presented a psychologist who had examined petitioner. She testified that petitioner appreciated the nature of the charges against him and the possible consequences and that he could consult with his attorney and assist with his defense.    See Tr. of 3/11/91 Hr'g at 9 & ex. p. 12. She had no doubt that petitioner was competent.    See id. at 11. Defense counsel did not cross-examine the psychologist, since he and petitioner did not think competency was an issue.    See id. Judge Knight found, based upon the evidence presented, that the State established petitioner's competence by "clear and convincing" evidence.    See id. at 16-17; O.R. (CRF-91-1, CRF-91-2) at 50, 51; see also Tr. of 3/12/91 Hr'g at 8 (finding of Judge Knight, based on the two evaluations and the court's observations of petitioner, that petitioner was competent).

Based on these facts, we conclude Judge Knight did not place the "clear and convincing" burden held unconstitutional in    Cooper on petitioner at the second hearing. Judge Knight requested examination and held the hearing only out of an abundance of caution. Petitioner presented no evidence and indeed did

not contest his competency. Only the State presented evidence. Judge Knight determined the State proved petitioner was competent by "clear and convincing" evidence. Thus, petitioner was not held to the unconstitutional burden of proving his incompetence by "clear and convincing" evidence. Accordingly, with respect to the second competency hearing, we afford the state court's finding of competency a presumption of correctness unless petitioner rebuts the presumption by clear and convincing evidence. See Bryson, 1999 WL 590738.

Petitioner apparently attempts to rebut the presumption by arguing his trial counsel did not investigate or raise an issue of competency. Petitioner does not present any specific evidence tending to show he was incompetent. The evidence petitioner mentions on appeal, but which was not presented to the trial court, of his personal mental illness; family history of mental illness; possible organic brain disease; dysfunctional, abnormal, and impoverished home environment; sexual abuse by an uncle; head injury; and difficult childhood, does not suggest he actually was incompetent. Rather, the record reflects that petitioner had been examined several times during the preceding years as a result of his lengthy criminal history and was always determined to be competent. See Tr. of 3/12/91 Hr'g at 6; O.R. (CRF-91-1, CRF-91-2) at 90. His behavior, understanding, and

demeanor during the court proceedings did not suggest incompetency. Also, petitioner himself believed he was competent. See Tr. of 3/12/91 Hr'g at 7-8. [6]

Petitioner has thus failed to point to clear and convincing evidence rebutting the presumption of correctness of the state trial court's finding of competence. See 28 U.S.C. §2254(e)(1). Nor was the state court's competency decision based upon an unreasonable determination of the facts in light of the evidence presented. See id. § 2254(d)(2).

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner presents two claims of ineffective assistance of trial counsel: (1) counsel labored under a conflict of interest and (2) counsel failed to investigate mitigating evidence. Although respondent argued in the district court that both claims are procedurally barred, he does not continue to assert procedural bar to this court. See Appellee's Br. at 10-15. Accordingly, we address the merits of these claims. See Hooks, 1999 WL 502608, at *9.

---

[6] To the extent petitioner is arguing ineffective assistance of counsel, we conclude he has not succeeded in showing trial counsel was ineffective for failing to investigate or raise a further issue of his competency. See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984) (requiring petitioner to show counsel's performance fell below objective standard of reasonableness and reasonable probability that but for counsel's errors outcome of proceedings would have been different).

A.  CONFLICT OF INTEREST AND DISCOVERY

Four months before being appointed to represent petitioner, trial counsel had been employed as first assistant district attorney (DA) in the office investigating the Domer homicide.  Petitioner argues that he was not fully informed of counsel's involvement in the prosecution of this case before counsel left office and therefore his waiver of conflict-free counsel was not fully informed.  Also, petitioner "believe[s]" defense counsel "may" have entered into a book or movie contract during his representation of petitioner.  Appellant's Br. at 20-21.  This allegedly was not disclosed to petitioner before he made his waiver.  Additionally, petitioner urges that this court reverse the district court's denial of discovery on these conflict issues.

Petitioner first presented a federal conflict of interest claim in state post-conviction proceedings.  The Oklahoma Court of Criminal Appeals determined the claim was procedurally barred because petitioner waived a direct criminal appeal.   See Wallace , 935 P.2d at 369-70.  The federal district court agreed, but nevertheless addressed the merits of the claim, determining petitioner knowingly and voluntarily waived any conflict of interest.  The court further determined petitioner personally made the decision to enter guilty pleas and there was not a remote possibility that petitioner would have insisted on going to trial if counsel had more fully disclosed any potential conflicts.  Accordingly, the

district court denied discovery on the issue. Because the federal district court decided this claim on its merits in the first instance, we review that court's conclusions of law de novo. See LaFevers, 182 F.3d at 711.

Effective assistance of counsel includes the right to representation that is free from conflicts of interest. See Wood v. Georgia, 450 U.S. 261, 271 (1981); Stouffer v. Reynolds, 168 F.3d 1155, 1161 (10th Cir. 1999). A petitioner may waive his right to conflict-free counsel. See Holloway v. Arkansas, 435 U.S. 475, 483 n.5 (1978). Any waiver must be knowing, voluntary, and done with awareness of relevant circumstances and likely consequences. See Stouffer, 168 F.3d at 1162; see also Brewer v. Williams, 430 U.S. 387, 404 (1977) (determining waiver is "an intentional relinquishment or abandonment of a known right or privilege") (further quotation omitted). Because petitioner's competence is not in doubt, he can knowingly and intelligently waive his rights. See Medina v. California, 505 U.S. 437, 450 (1992). This court indulges every reasonable presumption against waiver, however. See Stouffer, 168 F.3d at 1162.

The record shows that petitioner was advised of a conflict of interest relating to counsel's former employment and that he knowingly, voluntarily and intelligently waived his right to conflict-free representation. Before petitioner entered his guilty pleas, the trial court learned of the potential conflict. The court

-18-

held a hearing, advised petitioner of the conflict, and informed him that other counsel could be appointed to represent him. Petitioner indicated that counsel had discussed the possible conflict with him and that he waived appointment of other counsel. See Tr. of 2/4/91 Hr'g at 4-5 & ex. p. 7 (written waiver). Also, counsel indicated that he had informed petitioner of the possible conflict. See id. at 3.

Petitioner believes that this hearing and counsel's disclosure were insufficient and that he needs discovery to show that the conflict was not fully disclosed. Petitioner maintains that the federal district court abused its discretion in refusing his request for discovery. First, petitioner sought to discover counsel's involvement in the Domer murder investigation. Petitioner believes that discovery would show that the office investigator reported either to the DA or to defense counsel, who was first assistant DA. Petitioner also maintains that the DA's office did not turn over its entire file. Petitioner believes information remaining in the file would be relevant to whether his waiver of conflict-free counsel was made after full disclosure.

Petitioner also sought to obtain the entire trial file kept by counsel. According to petitioner, counsel removed documents from the file. Petitioner admits having no knowledge of the contents of the documents, but suspects they show the existence of a contract to sell literary rights to his case.

-19-

Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts permits discovery in the discretion of the trial judge upon a showing of "good cause." See LaFevers, 182 F.3d at 723. Good cause is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (further quotation omitted).

We conclude the district court did not abuse its discretion in denying discovery. See Stouffer, 168 F.3d at 1173. Petitioner's suggestion that counsel had greater involvement in the prosecution of the Domer case than counsel originally disclosed was general and conclusory. Furthermore, the evidence presented to the trial court strongly indicated that counsel did not have a role with regard to that investigation. See Tr. of 2/4/91 Hr'g at 2-3, 5, 6 (testimony of counsel and criminal investigator; statement by prosecutor). It also appears that a book or movie contract is pure speculation, and petitioner does not actually assert that there was a contract. Thus, we conclude petitioner knew all material facts pertinent to his waiver of representation by conflict-free counsel, and he knowingly, voluntarily, and intelligently made the waiver.

Even if we were to conclude petitioner was not fully informed of counsel's conflict, petitioner cannot show his waiver was not knowing, voluntary, and

intelligent. Under the clear, unequivocal facts presented here, it is not "impossible" to determine how petitioner would have responded if counsel had made further disclosure, and we need not engage in "unguided speculation" to determine that any failure of counsel to more fully disclose was harmless. Holloway , 435 U.S. at 491. At all times, petitioner was articulate, forthright, and adamant about pleading guilty and obtaining the death penalty, even against counsel's advise. Before his return to Oklahoma, petitioner had rejected the advice of his Arkansas counsel and confessed to the Domer homicide and refused that counsel's presence during the confession. See Tr. of 4/4/91 Hr'g at ex. p. 95 (exhibits 23 & 24). The presentence report indicated petitioner was well aware of the criminal justice system as he had spent much of his adult life in prison or in the criminal justice system. See O.R. (CRF-91-1, CRF-91-2) at 89. Furthermore, petitioner consistently indicated his satisfaction with trial counsel. See, e.g. , Tr. of 3/12/91 Hr'g at 13; Tr. of 4/12/91 Hr'g at 10. We conclude that further disclosure of conflict, if any, would not have affected petitioner's decision to waive his right to conflict-free counsel, because petitioner fully understood what he was doing, knew the consequences of his actions, and would never have deviated from his course to plead guilty and seek the death penalty.

B.  FAILURE TO INVESTIGATE AND PRESENT MITIGATION EVIDENCE

Petitioner argues that even if he waived his right to conflict-free counsel, he made no waiver of his right to effective representation.  Essentially, petitioner complains counsel did not investigate and present mitigating evidence.  According to petitioner, counsel failed to investigate his background; did not interview his family members; and failed to request or review records regarding his previous incarcerations, hospitalizations, and commitments.  If counsel had done so, petitioner believes he would have found evidence of physical and sexual abuse, a family history of mental illness, and a previous "horrific" incarceration in Arkansas.  Also, petitioner complains that counsel did not present evidence about his cooperation in prison.  Because counsel allegedly conducted no investigation, petitioner maintains the decision not to present mitigating evidence was not an informed tactical decision.

On direct criminal appeal, the Oklahoma Court of Criminal Appeals held petitioner was permitted to waive presentation of mitigating evidence.         See Wallace , 893 P.2d at 508, 515 n.10.  The court determined if counsel had presented mitigating evidence, he would have contravened petitioner's wish that no evidence be presented.    See id. at 515 n.10.

On post-conviction review, the Oklahoma appellate court first determined petitioner had waived his claims that ineffective assistance of counsel deprived

-22-

him of mitigating evidence and that his waiver of the presentation of mitigating evidence was not knowing, intelligent, and voluntary.    See Wallace, 935 P.2d at 370.  The Oklahoma Court of Criminal Appeals, however, recognized that it had made a determination on direct appeal that

> Petitioner had the capacity to understand the choice between life and death and to knowingly and intelligently waive all rights to present mitigating evidence.  Petitioner knew what mitigating evidence was, as his attorney discussed it with him.  He likewise knew he had the right to present mitigating evidence.  Petitioner refused to cooperate with his attorney in the presentation of mitigating evidence; indeed, Petitioner would not even let his attorney cross-examine prosecution witnesses during the sentencing hearing.

Id. at 376.  The court concluded "[p]etitioner understood the nature of mitigating evidence, understood the choice between life and death, and knowingly and intelligently waived all his rights to present mitigating evidence."    Id.

The federal district court determined that counsel did as petitioner wished and that petitioner failed to show he would not have pleaded guilty if counsel had more thoroughly investigated mitigating evidence.

Claims of ineffective assistance of counsel are mixed questions of law and fact.  See Miller v. Champion, 161 F.3d 1249, 1254 (10th Cir. 1998) (applying AEDPA).  "To establish ineffective assistance of counsel, a petitioner must prove that counsel's performance was constitutionally deficient and that counsel's deficient performance prejudiced the defense . . . ."    Boyd, 179 F.3d at 913 (citing Strickland, 466 U.S. at 687);    see also  Hill v. Lockhart, 474 U.S. 52, 58 (1985)

(holding this two-part test applies to challenges to guilty pleas based upon ineffectiveness of counsel). To prove deficient performance, petitioner must overcome the presumption that counsel's conduct was not constitutionally defective. See Boyd, 179 F.3d at 914. Judicial scrutiny of counsel's performance is highly deferential. See Strickland, 466 U.S. at 689. To establish prejudice, petitioner must show that but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. See id. at 694.

"[C]ounsel's duty to investigate all reasonable lines of defense is strictly observed in capital cases." Nguyen v. Reynolds, 131 F.3d 1340, 1347 (10th Cir. 1997), cert. denied, 119 S. Ct. 128 (1998); see also Brecheen v. Reynolds, 41 F.3d 1343, 1366 (10th Cir. 1994) (in context of sentencing phase, attorney has duty to conduct reasonable investigation, which includes investigation into defendant's background; failure to conduct reasonable investigation "may" be deficient performance). Counsel, however, may make a reasonable decision that investigation is unnecessary. See Strickland, 466 U.S. at 691; Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997). A decision not to investigate is assessed for reasonableness, giving deference to the attorney's judgment. See Strickland, 466 U.S. at 691; Williamson, 110 F.3d at 1517. The reasonableness

-24-

of counsel's decision not to investigate may be determined or greatly influenced by the petitioner's statements or behavior.    See Strickland , 466 U.S. at 691.

Failure to present mitigating evidence is not per se ineffective assistance of counsel.  See Boyd, 179 F.3d at 918.  Where available mitigating evidence is not presented, this court focuses on the reason for the decision not to present the evidence.  See Brecheen , 41 F.3d at 1368. "'[T]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements and actions.'"    See id. at 1370 (quoting   Strickland , 466 U.S. at 691).

Although the decision to introduce mitigating evidence is a nonfundamental right which is waivable by the defense attorney on the defendant's behalf,   see id. at 1368-69, petitioner here actually waived investigation and presentation of mitigating evidence himself after conferring with counsel.  At all times, counsel acted in accordance with petitioner's wishes not to cross-examine State witnesses, object to State evidence, or present mitigating evidence.   See Tr. of 4/4/91 Hr'g at 51-52, 58-59, 67, 70-71, 84, 97, 102-03, 105 (counsel stated that at petitioner's request and instructions he would not cross-examine witnesses; petitioner confirmed counsel's statements and said he understood he could receive death penalty and death penalty was what he wanted; petitioner stated he did not want counsel to object to the videotape

deposition of Ferguson; counsel stated that at petitioner's direction he would not object to exhibits and petitioner confirmed).

Petitioner, the only defense witness at the punishment trial, testified: (1) counsel presented no defense at his instructions; (2) he understood counsel could have vigorous ly presented a defense if he had desired one; (3) he pleaded guilty against his attorney's advice and he informed counsel from the outset he wanted the death penalty; (4) the aggravating evidence was overwhelming and damning; (5) he instructed counsel not to cross-examine witnesses or to object to the evidence because his goal was to obtain the death penalty; (6) if he had not been caught, he would engage in the same behavior again; and (7) he had no desire to present mitigating evidence. See id. at 106-08. Defense counsel's closing statement confirmed that he represented defendant's professed interests. See id. at 115-16. At sentencing, petitioner again declined to present any evidence to mitigate punishment. See Tr. of 4/12/91 Hr'g at 5. Based on the unique facts of this case, counsel's decision not to investigate or present mitigating evidence was completely determined by petitioner and was within the realm of reasonable tactical decisions. Cf. Brecheen , 41 F.3d at 1369 (deciding failure to present additional mitigating evidence was tactical decision where petitioner did not want to delay proceedings). We conclude petitioner has failed to show that counsel's performance was deficient.

-26-

Also, petitioner has not shown prejudice. He has not shown that but for any failure of counsel to investigate he would not have pleaded guilty or sought the death penalty. See Hill, 474 U.S. at 59. Rather, the record shows petitioner was absolutely determined to plead guilty and to obtain the death penalty.

Because petitioner has failed to make the required showings under Strickland and Hill, we conclude the state court decisions that counsel was not ineffective and that petitioner waived presentation of mitigating evidence are not unreasonable. See 28 U.S.C. § 2254(d).

V. CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.