MURPHY, Circuit Judge,
Dissenting
I write separately to express my disagreement with the majority’s resolution of McGregor’s procedural competency claim. -In particular, the majority misapprehends both the nature and import of the record bearing on McGregor’s ability to assist his trial counsel and understand the judicial procéedings. Because my assessment of the relevant evidence leads me to conclude that a bona fide doubt about McGregor’s competence to stand trial was raised during the trial, I dissent.
As the majority correctly articulates, McGregor’s procedural competency claim presents the following issue: whether the evidence and circumstances known to the trial court, both before and throughout the trial, raise a bona fide doubt in the mind of a reasonable jurist about McGregor’s ability either to consult with his attorneys with a reasonable degree of rational understanding or to possess a rational' and factual understanding of the'judicial proceedings. See Majority Op. at 1250-51; United States v. Williams, 113 F.3d 1155, 1160 (10th Cir.1997); Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Importantly, a trial court has thé responsibility to insure that the defendant is competent throughout the entire trial. See Drope v. Missouri, 420 U.S. 162, 171-72, 181, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). This court must therefore grant McGregor relief if a bona fide doubt about his competence existed at any time during his second trial, even if no such doubt was raised prior to or throughout the balance of the trial.
The majority properly notes that in ascertaining whether a bona fide doubt about McGregor’s competence exists, this court considers “ ‘defendant’s demeanor at trial, any evidence of irrational behavior by defendant, and perhaps most important, any prior medical opinions regarding competency.’ ” Majority Op. at 1251 (quoting Clayton v. Gibson, 199 F.3d 1162, 1171 (10th Cir.1999)). Additional factors for this court’s consideration include evidence of mental illness and any representations made by defense counsel before and dur *1258 ing trial regarding the defendant’s competence. See Drope, 420 U.S. at 181, 178 n. 13, 95 S.Ct. 896. The record evidence bearing on these relevant factors does not support the majority’s conclusion that no bona fide doubt about McGregor’s competence existed at any point during his trial. Particularly troubling is the majority’s failure to adequately consider defense counsel’s statements during trial about McGregor’s competence, despite Tenth Circuit and Supreme Court precedent emphasizing the importance of defense counsel’s representations concerning competence.
The majority opinion first acknowledges that the trial court was aware McGregor suffered “a long history of mental illness and treatment with psychotropic medication,” though the majority states that such mental illness alone does not create a bona fide doubt about McGregor’s competence. Majority Op. at 1251. The history, nature, and severity of McGregor’s mental illness deserves elaboration. According to the trial testimony of psychiatrist Hans Von Brauchitsch, McGregor’s birth was marked by complications resulting both in his inability to breathe regularly for several hours and possible oxygen deprivation. Von Brauschitsch further testified that as a young child, McGregor had a tendency to set himself and other things on fire and suffered seizure attacks during which he would lose consciousness. McGregor’s father testified at the October 1988 competency hearing that at the age of three, McGregor began experiencing one-to-two-hour periods of disorientation and started suffering delusions at the age of seven or eight.
As a consequence, McGregor was placed in a mental hospital in his mid-teens, where he was diagnosed with a “ ‘borderline’ (psychotic) and schizoid type condition.” There, McGregor received shock treatment and was prescribed heavy doses of psychotropic medication. Around that time, McGregor was also shot four times in the head; bullet fragments remain lodged in his brain. Several years later, while incarcerated in Texas, McGregor was diagnosed with a seizure disorder characterized by periods of blackouts and violent outbursts. While in prison in Oklahoma between 1980 and 1982, McGregor was diagnosed with a severe paranoid schizophrenic disorder and received potent anti-psychotic medications. After conducting a competency evaluation prior to McGregor’s first trial in 1983, a psychiatrist diagnosed McGregor as a paranoid schizophrenic with anti-social personality disorder and prescribed four 100 mg doses per day of Mellaril, a powerful antipsychotic drug. Finally, a clinical psychologist who performed a competency evaluation of McGre-gor almost ten months prior to his second trial stated that McGregor was mentally ill, but that his schizophrenic symptoms appeared to be in remission due to medication. In short, the trial court was well aware that McGregor suffered from severe mental illness and brain injury throughout his entire lifetime.
In concluding that despite the evidence of McGregor’s mental illness there exists no bona fide doubt about his competence to stand trial, the majority places principal reliance upon the opinions offered by the mental health experts who performed the competency evaluations before both trials. See Majority Op. at 1251-52. Both experts opined that McGregor was competent to stand trial. Even the opinion presented at the second competency hearing, however, was rendered nearly ten months prior to the actual trial, a fact which detracts from the weight this court should afford that opinion.[1] Cf. Pate v. Robinson, 383 U.S. 375, 383-85, 86 S.Ct. 836, 15 *1259 L.Ed.2d 815 (1966) (concluding a bona fide doubt about the defendant’s competency was raised, even though a psychiatrist who evaluated the defendant several months prior to the trial had found him competent). More importantly, however, both experts, as the majority recognizes, hinged their evaluations to some degree on McGregor’s continued treatment with anti-psychotic medication.[2] See Majority Op. at 1251. Despite the qualified nature of these expert opinions, the majority defers to them because “the evidence fails to indicate any significant disruption in [McGre-gor’s] medication during trial.” Id. The record, however, reveals that the type and dosage of medication prescribed changed from the time of McGregor’s competency evaluations to the time of his second trial, that questions arose during trial about whether he was receiving inconsistent and perhaps improper dosages of his medication, and that McGregor took no medication at all for at least an entire morning during the trial.
When both experts evaluated McGregor for a competency determination, they noted that he was then taking Mellaril, an antipsychotic medication. Although the record does not indicate the dosage of Mellaril prescribed to McGregor at the time of the second evaluation, when he was first evaluated he was taking 400 mg of the drug each day. By the inception of the second trial, McGregor’s medication had been changed from Mellaril to Thorazine. According to a psychiatrist who testified at McGregor’s October 1988 competency hearing, though Thorazine is in the same family of drugs as Mellaril, its sedative effect is stronger than that of Mellaril. On the third day of voire dire, McGregor’s attorney informed the trial judge that McGregor was now ingesting a total of 500 mg of Thorazine each day. McGregor’s attorney indicated to the trial court that this 500 mg dose of Thorazine exceeded by 100 mg the amount which McGregor had been prescribed, raising a question as to whether McGregor was being properly medicated.[3]
The record further indicates that for an entire morning of the trial, McGregor was unmedicated. On the fifth day of trial, two days following defense counsel’s representations of elevated levels of Thorazine administration and after the government had given its opening statement, the trial court judge stated on the record that the Sheriff had just informed him McGregor was refusing to take his Thorazine that morning. The judge then stated, “I intend to proceed with the trial whether he takes his medication,” without any inquiry into the effects of not medicating McGregor.[4] The trial did proceed that morning, even though McGregor did not take his medication until lunchtime.[5] In sum, though *1260 the majority concedes the two expert opinions that McGregor was competent to stand trial were qualified by the recognized need to properly medicate him, it fails to acknowledge that significant questions arose at trial as to whether he was then consistently receiving the type and amount of medication necessary to maintain his competence.[6] Cf. Walker v. Attorney General, 167 F.3d 1339, 1346-47 (10th Cir.1999) (concluding no bona fide doubt about defendant’s competence was raised when a mental health expert testified that defendant’s competence could hinge on his continued lithium treatment and there was no evidence of any disruption in that treatment).
McGregor’s behavior during the trial also raises questions about his ability to understand the proceedings and assist his attorneys. In the afternoon of the first day of voire dire, a deputy and McGregor’s counsel informed the trial judge that during lunch McGregor had thrown a temper tantrum because his shirt did not have a pocket and defense counsel described McGregor as “not extremely rational.” They also indicated that McGregor had threatened to disrupt the trial. The trial judge’s response was to initiate voire dire of each potential juror individually to avoid tainting the entire pool should McGregor cause disruption; no inquiry was made, however, concerning competence. At the end of that first day, after the judge instructed the attorneys that they would continue the voire dire process the following morning, McGregor, apparently addressing the judge, stated, “Do you want a game of basketball before we leave, one on one?” This cryptic, inexplicable inquiry suggests that McGregor did not understand the seriousness or perhaps even the nature of the judicial proceedings in which he was involved. See Williams, 113 F.3d at 1160 (noting that a defendant’s cryptic responses to the trial court should have alerted the court to the need for a competency hearing).
The following day, the trial court adjourned early because McGregor was experiencing an extreme headache and disorientation. On the third day, McGregor’s attorney told the court that his client had a blackout that morning. On the fifth day of trial, when McGregor refused to take his Thorazine for the morning session, the trial judge allowed McGregor to leave the courtroom twice. When he did take Thorazine at lunchtime, McGregor asked if he could be allowed to sleep until 2:30 P.M. while the trial continued, though ultimate *1261 ly, McGregor decided to remain in the courtroom the entire afternoon. The following day, McGregor’s attorney stated on the record that McGregor “has not assisted me, he has'hindered me from the day this trial started until this very second. He has hindered me in regards to this case and talked nonsense the whole time. I still think he’s crazy.” The trial judge indicated he could not hear what McGre-gor was saying when he spoke with his counsel. Two days later, the eighth day of trial, McGregor’s attorney informed the court that McGregor had been experiencing flashbacks and blackouts that morning. That day, McGregor once again absented himself from the courtroom for a short portion of the proceedings.
These multiple incidents are at odds with the majority’s statement that McGre-gor’s “conduct and demeanor at trial were not so bizarre and irrational as to raise a bona fide doubt that he was incompetent.” Majority Op. at 1252. His behavior at least should have raised the eyebrow of the trial judge who was informed by two experts that McGregor’s competence was affected by the proper administration of medication. In light of the expert opinions and the questions about the proper administration of medication during the trial, McGregor’s decision to leave the courtroom for portions of his trial should cause any reasonable judge sufficient concern about McGregor’s ability to assist his attorneys and understand the gravity of the charges and proceedings to suggest the need for a hearing to explore those concerns.
It is true that some, though not all, of the information concerning McGregor’s bizarre behavior and his inability to assist counsel came to the attention of the trial court by means of representations from defense counsel. Regarding these representations, the majority simply states that “[although defense counsel’s representations concerning a defendant’s competency should be considered, ... ‘concerns of counsel alone are insufficient to establish doubt of a [petitioner’s] competency.’ ” Id. at 1251-52 (quoting United States v. Mackovich, 209 F.3d 1227, 1233 (10th Cir.2000) and citing Bryson v. Ward, 187 F.3d 1193, 1202 (10th Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 1566, 146 L.Ed.2d 469 (2000)). The litany of evidence detailed above vividly indicates that defense counsel’s expressions of concern about his client’s ability to assist in his own defense and understand the proceedings did not stand alone to create doubt about McGregor’s competence. More importantly, however, the cases on which the majority relies in dismissing the significance of defense counsel’s representations actually emphasize the importance of such representations. Prior to stating that “the concerns of counsel alone are insufficient to establish doubt of a defendant’s competency,” the court in Bryson noted, “defense counsel is often in the best position to determine whether a defendant’s competency is questionable.” 187 F.3d at 1201-02; see also Mackovich, 209 F.3d at 1233 (same).[7] The Supreme Court has also recognized the significance of representations made by a defendant’s attorney about the defendant’s competence, stating, “Although we do not, of course, suggest that courts must accept without question a lawyer’s representations concerning the competence of his client, an expressed doubt in that regard by one with the closest contact *1262 with the defendant is unquestionably a factor which should be considered.” Drope, 420 U.S. at 178 n. 13, 95 S.Ct. 896 (citations and quotation omitted). Moreover, this court has consistently emphasized the importance of a defense attorney’s failure to raise the competency issue at trial when it has concluded that no bona fide doubt about competence exists. See, e.g., Smallwood v. Gibson, 191 F.3d 1257, 1279 (10th Cir.1999); Walker, 167 F.3d at 1346; Wolf v. United States, 430 F.2d 443, 445 (10th Cir.1970).
In this case, McGregor’s counsel repeatedly expressed his opinion that his client was unable to assist in his defense, forcefully stating, “I have not ever dealt, in my career, with someone like this [defendant].” In particular, defense counsel indicated that McGregor could not communicate rationally with his attorneys. That characterization is entirely consistent with earlier representations made to the court both by McGregor’s father and his appellate counsel from the first trial. Because defense counsel’s representations about his client’s inability to assist in his defense were repeated, powerful, and corroborated and because controlling case law emphasizes the importance of such representations, the majority’s dismissive discounting of counsel’s representations is not appropriate in this case.
The majority’s emphasis on the trial judge’s own expressions concerning McGregor’s competence is somewhat misplaced.[8] See Majority Op. at 1252. McGregor’s claim is, to a large degree, that he was unable to communicate rationally with his attorneys. The trial judge stated on the record, however, that he was unable to hear the substance of McGre-gor’s conversations with his attorneys throughout the trial. The trial judge’s statements limited to McGregor’s appearance and non-disruptive behavior during the trial have little if any bearing on whether he was able to communicate with his attorneys with a reasonable degree of rational understanding.
In sum, a reasonable judge, aware of McGregor’s long history of serious mental illness and brain injury and cognizant that expert opinions about McGregor’s competence were contingent on his being properly medicated, would harbor a bona fide doubt about McGregor’s competence to stand trial when, at that trial, serious questions were raised about the consistency and appropriateness of the administration of his medication, his behavior at times was bizarre, and his attorney repeatedly informed the court that his client was wholly unable to assist in his defense. This is not a case, as the majority indicates, in which a history of mental illness alone suggests a bona fide doubt as to competence. See Majority Op. at 1252. I therefore dissent from the majority’s conclusion that the trial court’s failure to conduct a competency hearing did not deprive McGregor of his procedural due process rights. Because the appellate record is insufficient to allow this court to determine the feasibility of a retrospective competency hearing, I would remand for that determination. See Clayton v. Gibson, 199 F.3d 1162, 1169 (10th Cir.1999) (setting out factors for a court to consider in resolving *1263 whether a meaningful retrospective determination of competency is possible).

. The psychologist who conducted the competency evaluation for the second trial did so on July 25, 1988. The trial to determine whether McGregor was competent was held on October 31, 1988. At that trial, the psychologist testified only that McGregor was competent on the day he was evaluated in July, but would not opine as to McGregor’s competence at the time of the competency hearing itself on October 31. The trial on the murder charge began on April 17, 1989, nearly ten months after the July 25, 1988 assessment at which the psychologist deemed McGregor competent.

. The psychiatrist who evaluated McGregor prior to his first trial concluded that he was "competent with medication.” The psychologist who performed the competency assessment preceding the second trial opined that medication had caused McGregor’s schizophrenic symptoms to go into remission. Moreover, this psychologist conceded that he did not truly understand the effects of the medication which McGregor was taking.

. As discussed infra, the majority improperly discounts the importance of the representations made by defense counsel to the trial judge. See Majority Op. at 1251-52 n. 2. It should also be noted that after McGregor’s counsel informed the trial court about this increased dosage, the prosecutor stated that McGregor's medical records from the state penitentiary indicated he was only to receive 250 mg of Thorazine each day. The prosecutor’s representation does not, however, dissipate the doubt about whether McGregor was being properly medicated and thus competent. Instead, it suggests that both the dosage and the drug had changed from the time McGregor was first evaluated for competence and that he may have been receiving significantly more drugs during his trial than that prescribed. Certainly a reasonable trial judge would have inquired into the administration of the powerful antipsychotic drug during trial.

. Later in the trial, when the judge learned one morning that McGregor had not yet taken his medication because it was late in arriving, the judge did delay the proceedings until McGregor received the medication and it took effect.

. This court recognizes that a question exists as to whether a defendant can voluntarily *1260 render himself incompetent by refusing medication either to suspend the trial or to create an issue on appeal if the trial court proceeds with the trial. See Riggins v. Nevada, 504 U.S. 127, 136, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (declining to address the "question whether a competent criminal defendant may refuse antipsychotic medication if cessation of medication would render him incompetent at trial”). We need not resolve this question in the instant case, however, because the record does not inform this court of the reason why McGregor refused medication, in part because the trial court never conducted a hearing to ascertain McGregor’s motive or the effect of his refusal to take medication on his competence.

. It is true, as the majority notes, that at one point in the trial, when questions arose about McGregor’s medication, the prosecutor stated that a few months before trial "the people from the medical services at Oklahoma State Penitentiary ... informed [me] ... that it would take potentially two weeks of not taking any medication of this type for it to show up in any behavioral problems of the defendant.” See Majority Op. at 1251 n. 2. The majority’s substantial reliance on this bare assertion by the prosecutor, however, is improper. Under this court’s precedent, the prosecutor’s statement is irrelevant to our procedural competency analysis if the remainder of the evidence creates a bona fide doubt about McGregor’s competence during the trial. " '[O]nce doubt is raised, the court cannot dispel it simply by relying on contrary evidence. The protections of an adversary proceeding must be afforded the defendant.' ” United States v. Williams, 113 F.3d 1155, 1160-61 (10th Cir.1997) (quoting Sena v. New Mexico State Prison, 109 F.3d 652, 654-55 (10th Cir.1997)). The prosecutor's representations at least highlighted the necessity for the trial judge to explore the effect of problematic administration of the antipsychotic drug and to probe the legitimacy of the prosecutor's medical representations.

. In United States v. Mackovich, relied upon by the majority, the issue presented to this court was whether a district court’s factual finding of competence following a competency hearing was clearly erroneous. See 209 F.3d 1227, 1231-33 (10th Cir.2000). In concluding the defendant had failed to demonstrate that the district court's factual finding of competence was clearly erroneous, the Mackovich court stated, "concerns of counsel alone are insufficient to establish doubt of a defendant’s competency.” Id. (quotation omitted). That the mere concerns of defense counsel cannot overcome a factual finding of competence rendered after a proper competency hearing has no-bearing on the entirely distinct question in this case of whether a trial court’s failure to hold such a hearing deprived McGregor of his procedural due process rights. Mackovich is thus inapposite to this court’s resolution of McGregor’s procedural competency claim.

. The majority stales, "The trial judge, who had ample opportunity to observe Mr. McGre-gor daily during trial, did not express any concerns that he was incompetent.” Majority Op. at 1252. Although it is true the trial judge did not express concerns about McGre-gor's competence during his second trial, the judge’s decision to hold a competency trial prior to the second trial necessarily means that he then harbored a doubt about McGre-gor's competency. See generally Scott v. State, 730 P.2d 7, 7-8 (Okla.Crim.App.1986) (noting that under the statutory scheme in place at the time of McGregor's competency trial, a trial court could only hold a competency trial if that court first determined a doubt was raised about the defendant's competence). Moreover, it is ironic that the majority would rely on the trial judge’s failure to express a concern about competence when our very inquiry is whether that trial judge should have been more concerned about competence than he apparently was.