FILED
United States Court of Appeals
Tenth Circuit

November 6, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JERRY LEE GRIST,

Defendant - Appellant.

No. 08-7031
(D.C. Nos. 07-CV-0117-RAW and
CR-05-064-RAW)
E.D. Okla.

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McKAY**, and **GORSUCH**, Circuit Judges.

Jerry Grist was sentenced to 240 months imprisonment after a jury

convicted him on two counts of possession with intent to distribute

methamphetamine. He filed a direct appeal, which was unsuccessful. He then

filed a pro se 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence,

arguing: (1) he was denied procedural due process because he did not receive a

competency evaluation/ hearing; (2) he was denied substantive due process

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

because he was incompetent during the criminal proceedings; and (3) he received ineffective assistance of counsel because his attorney did not request a competency evaluation/hearing. Counsel was appointed to represent Grist in the district court proceedings. The § 2255 motion was denied and he appealed from that denial.[1] Appointed counsel has continued to represent Grist on appeal. The issues presented are worthy of further consideration; we grant a COA on all three. Because the issues have been fully briefed by counsel we can move directly to the merits. We affirm.

## I. BACKGROUND

A. Trial Court Proceedings

On June 9, 2005, Brian Moore, a police sergeant with the City of Atoka, Oklahoma, discovered methamphetamine and approximately $9,000 cash in Grist's vehicle and on his person. Additional methamphetamine was discovered during a subsequent search of Grist's residence and adjoining property. One month later, on July 9, Grist was found unconscious at a highway rest stop after being assaulted with a baseball bat. On July 10, he went to the emergency room

---

[1] Grist did not file an application for a certificate of appealability ("COA") with the district court. A federal prisoner may appeal from the denial of habeas relief under 28 U.S.C. § 2255 only if the district court or this Court first issues a COA. 28 U.S.C. § 2253(c)(1)(B). "If an applicant files a notice of appeal, the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue." Fed. R. App. P. 22(b)(1). The district court did not act on Grist's constructive request for a COA within thirty days and thus, we deem the request denied. 10th Cir. R. 22.1(C).

and was diagnosed with a closed head injury with subarachnoid bleeding and a fractured wrist. Grist left the hospital against medical advice. Hospital records indicate Grist was told "he had a bleed in his head and it could possibly lead to death . . . ." (R. Vol. I at 61.)

On July 12, Grist was indicted with two counts of possession with intent to distribute methamphetamine and a warrant was issued for his arrest. On July 20, Grist surrendered and appeared in court with his attorney, Warren Gotcher, for an arraignment hearing. Grist pled not guilty. The prosecutor informed the court he had intended to file a detention motion, but was going to "hold off" because he had been notified "[Grist] had been assaulted and had some type of head trauma and is scheduled to have a CAT scan today for some bleeding on his brain." (R. Vol. VI at 4.) The court asked Gotcher whether he "ha[d] any objection to [the detention] motion being deferred" and counsel responded: "No, sir, not at all, Your Honor. [Grist] has got a broken wrist, potential skull fracture and bleeding, he is bleeding from the nose . . . . He needs to [see a doctor] because he has headaches and everything else with it." (*Id.* at 5.) The prosecutor explained: "Your Honor, just . . . so the Court can be aware, Mr. Gotcher showed me documentation from an emergency room doctor that indicated [Grist] left against doctor's advice and they said that his injuries were life-threatening should he leave the facility, and he did." (*Id.*)

The government later filed a motion to detain Grist pending trial. The court held a hearing on that motion on August 3. Grist testified regarding the assault and its lingering effects. He stated a CAT scan "confirmed I have bleeding in my head and I need to see a neurosurgeon and probably have surgery." (R. Vol. VII at 8.) Regarding the effects of the injury, Grist testified: "At times I have severe headaches and my vision is kind of messed up and my judgment, you know, or my equilibrium is kind of messed up." (*Id.* at 9.) He also stated "ever since I got beat up, I have trouble staying awake for very long." (*Id.* at 10.) Grist's girlfriend, Cindy Lilley, testified: "He's not himself." (*Id.* at 19.) She explained:

A:    All he does is work. He's just got—you know, he is not even able to do the work that he usually does, other than just supervise with a broken arm. He is limited in what he can physically do himself. Like he said, he has trouble staying awake and I—this is an assumption, but his concentration is not what it—you know, on different things, just daily things.

Q:    So, his ability to be alert, to consciously do things has been affected by this; is that correct?

A:    Well, I—let's just say more like forgetful, I guess would be what I would say.

(*Id.* at 20-21.)

After the court decided to detain Grist pending trial, Gotcher expressed his concerns regarding Grist's condition. He stated: "We have a trial date coming up. We are obviously going to have to get somebody to take care of him because his

concentration is such that I don't think he could really help himself at trial without having some neurosurgeon or neurologist treat him." (*Id.* at 30.) The court responded: "We may find that he is not fit for trial." (*Id.*) Despite Gotcher and the court's awareness of Grist's condition, Gotcher did not request, and the court did not *sua sponte* order, a competency evaluation.

The case was set for trial on August 29. On August 11, Gotcher filed a motion for a continuance, stating: "[Grist] has [s]ubarachnoid bleeding with right parietal fracture, suffering pain and cannot concentrate. That since [Grist] has not seen a neurologist or neurosurgeon [he] is not physically fit for trial until he is examined and treated by the appropriate medical provider." (R. Vol. V, Doc. 12 at 1.) The court continued the trial to October 3. On August 29, Gotcher filed a motion for pretrial release to enable Grist to "seek proper medical treatment." (R. Vol. V, Doc. 18 at 1.) He explained: "[Grist] is having problems seeing, having severe headaches and is suffering needlessly, the same problem [he] [had] at the Detention Hearing." (*Id.*) On September 14, Grist was seen by a neurosurgeon who determined the bleeding in his brain had been resolved. The next day, Grist sought to file a motion to suppress out of time. In support, Gotcher stated: "At the time of arraignment, [Grist] was dizzy, had a headache, and was not able to concentrate." (R. Vol. V, Doc. 26 at 1.) He explained: "[Grist] still suffers from headaches and now has some vision problems, however, [Grist] indicates that

overall [he] feels better, and can concentrate better than before." (*Id.*)  On September 27, the court held a pretrial conference and hearing on the request to file a motion to suppress.  The court asked Gotcher why he had filed a motion to suppress after conceding the arrest and search were lawful.  Gotcher responded he had not communicated with Grist in detail about the arrest and search immediately after the assault as he was concerned about Grist's condition.  The court granted Grist's request to file the motion to suppress out of time and heard evidence on the motion.

The court heard testimony from Officer Moore regarding the discovery of methamphetamine and cash in June 2005.  It also heard testimony from Grist, who testified to a different version of the events.  It denied Grist's motion to suppress, finding Officer Moore's testimony to be more credible:

> I don't want to say that I think that Mr. Grist is necessarily lying to me.  I don't think that.  But he seemed very confused about any number of details about the evening.  And from whether—whether [the passenger] didn't have a license or whether she did have a license and it was suspended, from what he was wearing to—I mean all sorts of details about the evening that he was very unsure of except this one particular—one particular fact.  And in watch[ing] him testify, I'm wondering if his memory of the evening may have been affected by the injury we've talked about, or perhaps by some other cause.

(R. Vol. VIII at 43-44.)

On October 3 and 4, Grist was tried by a jury and was convicted on both counts of possession of methamphetamine with intent to distribute.  He did not

testify. A presentence report was prepared, which recited Grist's complaints that he suffered from severe headaches, disorientation and problems with memory, vision and equilibrium as a result of the assault. On January 9, 2006, Grist was sentenced to 240 months imprisonment. He filed a direct appeal, arguing the district court erred in denying his motion for a mistrial because its misstatement to the jury during voir dire on the presumption of innocence was incurable. We affirmed. *United States v. Grist*, 193 Fed. Appx. 822 (10th Cir. 2006) (unpublished).

B. Post-Conviction Proceedings

Grist filed a pro se motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 alleging he had been denied procedural and substantive due process and had received ineffective assistance of counsel. Grist attached a variety of exhibits to his motion, including photographs of the injuries he sustained in the assault, affidavits of four individuals who attested to his mental and physical condition following the assault and letters from two physicians. In a letter dated January 30, 2007, Dr. Eric Fulton concluded: "[A]s of October of 2005 . . . [Grist] did not have the ability to understand or cooperate in his own defense." (R. Vol. I at 97.) In a letter dated February 21, 2007, Dr. J. R. Houston "concur[red] with Dr. Fulton" and concluded "[p]er my analysis, [Grist] is 17 months post injury and is apparently still suffering symptoms that may result in

permanent disability or death." (*Id.* at 98.) The court appointed counsel to represent Grist and referred the case to a magistrate judge.

On July 16, 2007, the magistrate judge held an evidentiary hearing. Three defense witnesses testified Grist exhibited behavioral changes following his head injury, including short-term memory loss, lethargy, increased sleep, headaches, and irritability. One witness testified these changes continued through the time of trial. Grist testified he could not recall any of his court appearances. He explained: "I remember the sentence. That's about the only thing I really remember." (R. Vol. III at 82.)

Following the hearing, the magistrate judge issued an order stating he intended to deny Grist's procedural due process and ineffective assistance of counsel claims, but had not yet resolved the substantive due process claim. Over Grist's objection, the judge ordered Grist "undergo a psychiatric examination" "in the interest of fully exploring [Grist's] substantive due process competency claim." (R. Vol. I at 129.) The purpose of the examination was to "investigate: (I) whether a meaningful retrospective determination of [Grist's] competency to stand trial at the time of his trial can be made . . . ; (ii) whether [Grist] was in fact actually competent to stand trial at the time he was tried; and, (iii) whether [Grist] is presently competent to stand trial if the Court should grant relief pursuant to 28 U.S.C. § 2255." (*Id.*)

Grist was examined by Dr. Christina Pietz, a board-certified forensic psychologist, and Dr. Robert Denney, a board-certified neuropsychologist and forensic psychologist. In her report, Dr. Pietz opined Grist was competent during the trial, although he did suffer serious injuries due to the assault and suffered from residual effects of those injuries. Dr. Denney agreed Grist could have experienced cognitive difficulty and behavioral changes as a result of the assault. However, both Dr. Pietz and Dr. Denney believed Grist was exaggerating his condition and Dr. Pietz diagnosed him with malingering.

On January 9, 2008, the court held an evidentiary hearing at which it heard testimony from Dr. Pietz and Gotcher. Dr. Pietz testified it was her opinion "it is possible to do a retrospective competency evaluation"; "[Grist] was competent to stand trial"; and "[Grist] is competent at the present time." (R. Vol. IV at 11.) However, she also testified: "If you look at the law, a competency evaluation probably should have been ordered." (*Id.* at 49.) She explained: "As soon as he was arraigned, I would have asked for a competency evaluation." (*Id.* at 51.) She stated: "In my opinion, he was competent in October of 2005 when he participated in the trial. However, if you look at the law, the law states that [a competency evaluation should be ordered] anytime there's a bona fide doubt, and because he had had a significant head trauma and had gone to the emergency room, that meets the criteria for bona fide doubt." (*Id.*)

Gotcher testified he believed Grist was competent during all stages of the criminal proceedings, but had some difficulty communicating with him prior to trial:

Q:      And could he communicate with you?

        [objection overruled]

A:      During [the] period of time [of the arraignment], the communication was not as fluid as I would have liked. Could he communicate? Yes. He had a skull fracture and a broken hand. And as I said, he was very lucid prior to [the beating]. After that time, he did not seek medical –-- I mean, he sought medical treatment but didn't stay at the hospital and left against medical advice. Then, at that point, he did have headaches, he had some concentration problems, and he complained at least some of memory loss . . . . So during that period of time, while my opinion was he understood what was going on . . . there were some communication problems.

Q:      Could you work through those problems?

A:      Oh, yes, sir.

(*Id.* at 72-73.)

On February 5, 2008, the magistrate judge issued a report and recommendation recommending Grist's § 2255 petition be denied. The magistrate rejected Grist's procedural due process claim, concluding Grist failed to establish a reasonable judge should have had a bona fide doubt as to his competency. The judge noted: "Not once during the proceedings . . . did [Grist] ever raise the issue of his competency." (R. Vol. I at 143.) Moreover, even assuming Grist was

-10-

denied procedural due process, the magistrate concluded relief was not warranted because Grist "has been afforded . . . the only relief to which he would be entitled for a procedural due process competency violation: a retrospective competency determination . . . ." (*Id.* at 154-55.)

The magistrate judge likewise rejected Grist's substantive due process claim, concluding Grist "does not satisfy the 'bona fide doubt' standard for a procedural claim, and therefore also does not satisfy the more demanding standard for a substantive claim." (*Id.* at 157 (quotations omitted)). The judge noted "[o]ne of the doctors did conclude (without much support) in his affidavit that [Grist] lacked th[e] abilities [to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense], but his opinion is unpersuasive when contrasted with the more well-informed opinion of Dr. Pietz that [Grist] was in fact competent." (*Id.* at 158.) The magistrate then discounted a portion of Dr. Pietz's testimony, stating: "Dr. Pietz opined that [Grist] should have been referred for a psychological evaluation at some point prior to the commencement of his trial, perhaps as early as his arraignment . . . . But Dr. Pietz indicated that her testimony in this regard was based [on] her opinion that [Grist's] head injury *alone* should have given the Court a *bona fide* doubt as to his competency." (*Id.* at 160.)

As for Grist's ineffective assistance of counsel claim, the magistrate judge

acknowledged that counsel's failure to request a competency hearing where there is evidence raising substantial doubt about a defendant's competence may constitute ineffective assistance of counsel, but the judge determined the evidence did not raise such a doubt. The judge also concluded Grist failed to establish prejudice because "[i]f [Gotcher] had requested a competency evaluation . . . the request would in all likelihood have been denied." (*Id.* at 162-63.)

Grist objected to the report and recommendation and the government filed a response. The district court adopted the magistrate's recommendation in a one-page order and entered judgment in favor of the government. Grist filed a timely notice of appeal. We treat the notice of appeal as a request for a COA. *See* Fed. R. App. P. 22(b).

## II. DISCUSSION

The issuance of a COA is jurisdictional prerequisite to an appeal from the denial of a § 2255 motion. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, an applicant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations

-12-

omitted).  In evaluating whether an applicant has satisfied this burden, we undertake "a preliminary, though not definitive, consideration of the [legal] framework" applicable to each of his claims.  *Miller-El*, 537 U.S. at 338.

Grist contends he was denied procedural due process, substantive due process and the effective assistance of counsel.[2]  We conclude Grist is entitled to a COA on all three issues.  "We review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error."  *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006).

## A.  Procedural Due Process

Grist contends he was denied procedural due process because the trial court should have held a competency hearing.  He did not raise this issue in his direct appeal.  "Generally, a movant is barred from raising an alleged error affecting his conviction or sentence for the first time on collateral review unless he can show both cause for the default and actual prejudice . . . . [or] can demonstrate that the constitutional error has probably resulted in the conviction of one who is actually innocent."  *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002) (quotations omitted).  The government has never argued Grist's procedural due

---

[2] "Competency claims can raise issues of both substantive and procedural due process.  A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent."  *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001) (en banc) (quotations and citation omitted).

process claim is procedurally barred.[3]  In *Wiseman*, we stated:

> This court . . . may raise and enforce the procedural bar *sua sponte*.
> Whether we do so depends on a weighing of various factors,
> including the interests in finality and the interests of judicial
> efficiency, conservation of scarce judicial resources, and orderly and
> prompt administration of justice.

*Id.* at 979-80 (quotations omitted).  Here, as in *Wiseman*, these factors weigh

against our *sua sponte* enforcement of the procedural bar.  Grist has not had

notice or a reasonable opportunity to respond to the defense; the parties have fully

briefed the merits; and the record is fully developed.[4]  "At this late stage in this

case, it is clearly inefficient to digress from the merits of [Grist's] claims and

delve into the procedural bar sua sponte."  *See id* at 980.  We thus proceed to

consider the merits of this claim.

"[T]he procedural due process right to a competency hearing is grounded

on the obligation of the state to provide adequate procedures to protect accused

individuals from being tried while incompetent."  *Gilbert v. Mullin*, 302 F.3d

1166, 1178 (10th Cir. 2002).  "[T]o prevail on a procedural due process

---

[3] Grist also did not raise his substantive due process and ineffective
assistance of counsel claims on direct appeal.  However, these claims are not
subject to the procedural bar.  *See Massaro v. United States*, 538 U.S. 500, 504
(2003) (ineffective assistance of counsel claims); *Nguyen v. Reynolds*, 131 F.3d
1340, 1346 (10th Cir. 1997) (substantive due process claims).

[4] Moreover, "[t]he government's complete failure to assert the procedural
bar defense weighs against its *sua sponte* enforcement."  *Wiseman*, 297 F.3d at
980.

competency claim a petitioner must raise a bona fide doubt regarding his competency to stand trial at the time of conviction . . . ." *McGregor v. Gibson*, 248 F.3d 946, 953 (10th Cir. 2001) (en banc). Where, as here, a petitioner "claims . . . the trial court should have held a competency hearing but did not . . . we must determine whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Id.* (quotations omitted).

Dr. Pietz concluded there was a bona fide doubt about Grist's competency at the arraignment hearing "because he had had a significant head trauma and had gone to the emergency room." (R. Vol. IV at 51.) The magistrate judge discounted this opinion, stating a head injury alone cannot create a bona fide doubt as to competency. The magistrate concluded, however, that even if Grist's procedural due process rights had been violated, he was afforded the only relief to which he would be entitled—a retrospective competency evaluation.

We assume, but do not decide, there was a bona fide doubt about Grist's competency at the arraignment hearing and thus, his procedural due process rights were violated by the court's failure to *sua sponte* order a competency evaluation/hearing. *See Godinez v. Moran*, 509 U.S. 389, 403 (1993) (Kennedy, J., concurring in part) ("We have not suggested that the *Dusky* competency

standard applies during the course of, but not before, trial. Instead, that standard is applicable from the time of arraignment through the return of a verdict."). Even assuming this violation, however, Grist is not entitled to further relief. He contends "[t]he decision of the district court should be reversed, [his] conviction reversed, and the case remanded for disposition." (Appellant's Br. at 26.) We disagree.

In *McGregor*, our conclusion that McGregor's procedural due process rights had been violated "d[id] not end the analysis." 248 F.3d at 962. We proceeded to consider "whether a retrospective competency hearing can be held." *Id.* We noted such hearings "are generally disfavored but are permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant." *Id.* (quotations omitted). And we set forth the factors that a court must consider in assessing whether a meaningful retrospective determination can be made:

> (1) The passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the government and defendant, and jail officials.

*Id.* at 962-63 (quotations omitted).

In *McGregor*, we concluded this test was not satisfied, and thus,

"McGregor's due process rights [could] not adequately be protected by remanding to the state court for [a retrospective competency] determination." *Id.* at 963. Here, by contrast, these factors support the magistrate judge's determination that a meaningful retrospective competency evaluation was possible.

As to the first factor, approximately two years elapsed between Grist's arraignment hearing (July 20, 2005) and his retrospective competency evaluation (August 23-October 22, 2007). This is not a particularly troublesome amount of time. *Compare Bryan v. Gibson*, 276 F.3d 1163, 1169 (10th Cir. 2001) (retrospective competency hearing was feasible after one and one-half years), *with McGregor*, 248 F.3d at 963 (retrospective competency hearing could not be held after eleven years).

As to the remaining factors, there was a plethora of evidence available to Dr. Pietz and Dr. Denney for them to make a retrospective competency evaluation. They had access to Grist's medical records and the transcripts of the proceedings at which Grist testified. They considered the affidavits of multiple individuals who interacted with Grist during the course of his criminal proceedings and interviewed the two probation officers involved in the preparation of Grist's presentence report. And they concluded, based on their medical training and the evidence available to them, that "it [was] possible to do a retrospective competency evaluation." (R. Vol. IV at 11.) We agree with the

magistrate judge that "[t]here is no indication that the state of the record in this case is insufficient for a meaningful retrospective competency determination." (R. Vol. I at 155.) Thus, we see no error in the district court's resolution of this claim.

B. Substantive Due Process

"A petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. In contrast to a procedural competency claim . . . a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *Walker v. Attorney Gen. for State of Okla.*, 167 F.3d 1339, 1344 (10th Cir. 1999) (quotations omitted); *see also Allen v. Mullin*, 368 F.3d 1220, 1239 (10th Cir. 2004) ("A substantive competency claim . . . requires the higher standard of proof of incompetency by a preponderance of the evidence.").

"The test for determining competency to stand trial is well-established. The trier of fact must consider 'whether defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *McGregor*, 248 F.3d at 952 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Though not entirely clear, Grist appears to argue he could

neither understand the nature of the proceedings against him nor consult with his counsel with a reasonable degree of rational understanding on account of the lingering effects of his head injury. The record does not support this claim.

While, as discussed above, there may have been a bona fide doubt about Grist's competence at the time of his arraignment, bona fide doubt is a lesser standard than a preponderance of the evidence, *see McGregor*, 248 F.3d at 952; *Walker*, 167 F.3d at 1344, and Grist has not shown by a preponderance of the evidence he was incompetent at any point during the criminal proceedings. Though he claimed to suffer from headaches and fatigue and claimed problems with his memory, equilibrium and concentration, he never claimed these problems resulted in him being incompetent under *Dusky*.

Grist's responses to the court's questioning at the arraignment hearing reveal he understood the nature of the proceedings against him. When asked whether he "underst[ood]both the charges against [him] and the punishment for the charges" he answered: "Yes, sir." (R. Vol. VI at 3.) When asked how he wanted to plead, he answered: "Not guilty." (*Id.* at 4.) He never expressed any doubt or confusion and responded to all the court's questions with short, but cogent answers. He testified rationally and coherently on August 3, 2005, and again on September 27, 2005. No one who interacted with Grist during the course of his criminal proceedings—his counsel, the prosecutor, the court, the probation

officer—ever expressed any doubt about his ability to understand the nature of the proceedings against him.

Gotcher's testimony and the record evidence reveal Grist was able to consult with counsel with a reasonable degree of rational understanding at every point during the criminal proceedings. At the January 9, 2008 hearing, Gotcher testified to the problems he had communicating with Grist immediately after the assault. He was asked "Could you work through those problems?" (R. Vol. IV at 73.) He replied: "Oh, yes, sir." (*Id.*) And he explained at the hearing on September 27, 2005, that he sought leave to file a motion to suppress out of time because he had learned of a new possible basis for suppression based on his conversations with Grist. We have noted "[d]efense counsel is often in the best position to determine whether a defendant's competency is questionable." *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999). Though Gotcher was concerned with Grist's physical well-being after the assault, he never expressed any doubt as to Grist's competence.

If the record left any doubt about Grist's competence, that doubt is removed by the retrospective competency evaluation performed by Dr. Pietz and Dr. Denney. They concluded, based on a thorough examination of Grist, interviews with interested parties, and a review of his medical records, that he had been competent to stand trial. Because the preponderance of the evidence

-20-

suggests Grist was competent, not incompetent, the district court did not clearly err in denying his substantive due process claim.

## C. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show: (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687. "This court may address the performance and prejudice components in any order, but need not address both if [petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

Here, we need not address the performance prong because we conclude Grist failed to show prejudice. In *Strickland*, the Court explained the "appropriate test for prejudice." 466 U.S. at 694. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To demonstrate counsel's failure to request a competency hearing caused prejudice, a petitioner must demonstrate "a reasonable probability that he was incompetent." *Williamson v. Ward*, 110 F.3d 1508, 1519 (10th Cir. 1997) (quotations omitted). Grist has not made this showing. As discussed above, there may have been a

bona fide doubt about Grist's competence at the time of his arraignment. However, there was never a "reasonable probability" he was incompetent. While we are not convinced the court would have denied counsel's request for a competency hearing had he made such a request at the time of the arraignment, we are confident such hearing would have resulted in a finding of competence and thus the outcome of the proceedings would not have been different.

We **GRANT** a COA on Grist's procedural due process, substantive due process and ineffective assistance of counsel claims but **AFFIRM** the denial of his § 2255 petition.

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge